[Civ. No. 54520. Second Dist., Div. One. Nov. 9, 1978.]

RICHARD RICHARDS et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
RONALD M. LEE et al., Real Parties in Interest.

**COUNSEL**

Schell & Delamer, Gerard E. Sabo and Mark B. Pepys for Petitioners.

No appearance for Respondent.

Richard A. Stone and Marc Lerner for Real Parties in Interest.

**OPINION**

**THOMPSON, J.**—In this petition for writ of mandate, we consider the right of a defendant sued in a cause of action which permits the assessment of punitive damages to a protective order which limits use of the results of discovery of his financial condition to the purposes of the lawsuit and prohibits disclosure of that information for other purposes. We conclude that absent a showing by the proponent of discovery that the interest of justice requires extraneous disclosure, the defendant is entitled to the protective order. We conclude further that the court may not deny the defendant the protection of the order as a sanction for failure to comply with the mandates of the discovery statutes.

Petitioners and real parties in interest agree on the facts. Petitioners are members of a law firm. Real parties in interest sued them for malicious prosecution, intentional interference with business relations, and intentional infliction of emotional harm. On May 8, 1978, real parties in interest served a set of 39 interrogatories upon petitioners. The first 38 seek information concerning the financial status of each of the petitioners. Interrogatories 1 through 13 are general in nature. Interrogatories 14 through 38 seek detailed data of assets, income, and liabilities. Interrogatory 39 states: "With respect to Interrogatories 14 through 38, you may in

lieu of answering said Interrogatories submit with your answers to these Interrogatories a current financial statement."

On June 5, petitioners served and filed objections to the interrogatories and a motion for a protective order. The trial court overruled the objections but issued a protective order stating: "Moving parties may deliver their Answers to the Interrogatories . . . in a sealed condition to the Clerk of the Court to be retained in a sealed condition and not to be opened except by the Judge Presiding at the Mandatory Settlement Conference in this action. Service to Clerk by 7/24/78 and Proof of Filing to moving parties."

Four of the five petitioners lodged purported financial statements with the clerk but not until August 15. On August 16, real parties in interest noticed their motion for sanctions. The trial court imposed a monetary sanction of $500 and ordered that if the fifth petitioner did not comply with the discovery request by August 23 the protective order would be set aside. The monetary sanctions were paid and are not in issue here.

The fifth petitioner lodged his purported financial statement with the clerk on August 22. The mandatory settlement conference was held on September 1 before a judge other than the one who had presided over discovery proceedings. At the conference, counsel for petitioners argued that the protective order should be construed as allowing the settlement judge to examine the content of the financial information filed under seal but as precluding the transmission of that information to real parties in interest or their counsel. The responses to interrogatories were not available to assist the settlement judge in ruling on the motion because they rested some place within the court's files but could not then be found.

The case did not settle. The settlement judge "directed" counsel for the parties to the department of the judge who had issued the protective order for "clarification and guidance." Counsel did as directed. The judge presiding over discovery set the matter for hearing on September 6. He solicited a proposed protective order limiting the use and disclosure of the financial information by real parties in interest and their counsel. On September 5, counsel for petitioners submitted a draft of a proposed protective order which, among other things, stated that the financial statements previously lodged might be examined only by counsel for real parties in interest or his representative and that the information obtained

in the examination could be used only for the purpose of preparation for trial of the subject lawsuit.

At the hearing on September 6, the financial statement of the fifth petitioner filed on August 22 was available to the judge. The other four financial statements filed previously were not, they still being somewhere in the morass of the files of the court and unobtainable after a three-hour search through the courthouse. The judge examined the one financial statement that was available to him. Concluding that the statement did not contain adequate financial information, the judge ordered that the "Protective Order of June 26, 1978, is set aside as to all defendants. All defendants are ordered to answer all Interrogs [*sic*] served 5/8/78 by 9:00 a.m. on 9/13/78."

On September 12, petitioners filed their petition for writ of mandate seeking to set aside the trial court's order of September 6. However, pursuant to the order of the trial court, petitioners also filed their answers to interrogatories 1 through 38 at 8:45 a.m. on September 13.

Unaware that petitioners had filed their answers to the interrogatories, we issued our stay order on September 13 to permit us to consider the petition. Still unaware that the answers had been filed, we, on September 20, 1978, issued our alternative writ in response to the petition.

We note at the outset that, while our examination of the financial statements filed by the petitioners reveals that at least most of them comply with the request of interrogatory 39, the issue of compliance is no longer before us. The interrogatories have already been answered specifically. Hence, we confine our consideration to the propriety of the trial court's ruling of September 6 dissolving the existing protective order without ruling upon petitioners' request for a substitute modified order.

 The trial court abused its discretion by dissolving the existing protective order while failing to grant that portion of the request for a new protective order which confines the examination of the financial data to real parties in interest's counsel or his representative and which limits use of the information obtained to the lawsuit.

The order of September 6 seems clearly to have been imposed as a sanction for petitioners' failure to furnish the fifth financial statement in the time required by the trial court. In that context, the sanction imposed is inappropriate. While the trial judge is vested with discretion to

impose sanctions for failure of compliance with discovery orders, the sanction imposed must be appropriate to the dereliction, must be authorized by the discovery statutes, and must not exceed that which is necessary to protect the interests of the party entitled to but denied discovery. (*Stein* v. *Hassen* (1973) 34 Cal.App.3d 294, 301 [109 Cal.Rptr. 321].)

As to four of the petitioners, the sanction is grossly invalid. Each had previously filed a purported financial statement. Those statements, through no fault of the petitioners, were not before the trial judge when he ruled so that the judge could in no way determine if they were adequate. He penalized the four because of what he perceived to be a failure of the fifth petitioner to supply a sufficiently detailed statement. In effect, the trial court held four of the petitioners hostage to force compliance by the fifth, and then imposed its sanction order when the fifth did not perform in a manner deemed adequate by the judge. By penalizing some of the parties for the perceived sins of a coparty, the judge abused his discretion.

The sanction order is also an abuse of discretion as to the fifth petitioner whose financial statement was deemed insufficient by the trial court. While the trial court could, if in fact the statement did not comply with interrogatory 39, have required that interrogatories 14 through 38 to which it related be answered, it could not, because the original response was inadequate, revoke its protective order.

Early in the history of California's civil discovery law, our Supreme Court held that a plaintiff alleging a cause of action which supports a claim for punitive damages may, in the course of discovery, obtain information concerning his adversary's financial status. (*Coy* v. *Superior Court* (1962) 58 Cal.2d 210, 222-223 [23 Cal.Rptr. 393, 373 P.2d 457, 9 A.L.R.3d 678].) The doctrine was adopted in a flush of optimism that the new processes of pretrial discovery would enhance the determination of truth at trial and encourage settlement based upon true facts by removing the "game element" from the litigation process. (*Greyhound Corp.* v. *Superior Court* (1961) 56 Cal.2d 355, 376 [15 Cal.Rptr. 90, 364 P.2d 266].)

Experience through the years with the manner in which the legal culture utilizes the process convinces that, rather than achieving the expected results in removing the game element, civil discovery has in far too many instances become its own means of substituting a battle of attrition for a search for truth. It has become a method by which the

volume or nature of information sought and not the probability of success of a claim or defense pressures settlement. (E.g., Becker, *Modern Discovery: Promoting Efficient Use and Preventing Abuse of Discovery in the Roscoe Pound Tradition* (1978) 78 F.R.D. 267, 277; Lasker, *The Court Crunch: A View From the Bench* (1977) 76 F.R.D. 245, 252-253; Rep. of Special Com. for the Study of Discovery Abuse, ABA Section of Litigation (Oct. 1977, 2d Printing and Revision, Dec. 1977); Blair, *Attacking the Caseload Dilemma: An Open Letter to The Bench and Bar of Iowa* (1977-1978) 27 Drake L.Rev. 319, 320-321.)

Discovery seeking financial information by reason of a claim for punitive damages is one classic instance of the manner in which civil discovery is used to achieve a litigation advantage never contemplated when the methodology was introduced into pretrial procedure. Causes of action for punitive damages have become very easy to allege. (See, e.g., *Neal* v. *Farmers Insurance Exchange* (1978) 21 Cal.3d 910 [148 Cal.Rptr. 389, 582 P.2d 980].) Response to discovery seeking financial information places a severe burden on the responder. As a minimum, there is the time and expense necessary to the compilation of a complex mass of information unrelated to the substantive claim involved in the lawsuit and relevant only to the subject matter of a measure of damages which may never be awarded. In addition, there is usually the potential that untoward disclosure of the information obtained may in some way or other react adversely against the disclosing party for reasons totally unrelated to the lawsuit. The possibilities run all the way from greater exposure to the not so gentle solicitations of some charitable organizations to the possibility of damage to the discloser in the competitive business arena.

Thus the denial to the fifth petitioner of the benefit of the prior protective order which placed his responses under seal, while unnecessary to the protection of the interests of real parties in interest who had sought the discovery, imposed a substantial detriment on the petitioner. For that reason, the order which denied all protection is one which abuses the discretion of the trial court.

We have considered the propriety of the order of September 6 in the context that to the extent that the then existing protective order was related to a contemplated settlement conference, it became unnecessary when settlement effort failed at the conference. Here we conclude that the same considerations which rendered dissolution of the earlier protective

order inappropriate as a sanction required the trial judge to grant a substituted protective order sought by the petitioners when he dissolved the earlier order.

Given the presently broad test of discoverable matter, the burden incident to the compilation of information that may never be of value to anyone seems built into the process. The potential of untoward disclosure of the financial information obtained in the discovery process is not. It seems a rare instance indeed that the potential of disclosure for purposes unrelated to the lawsuit or to persons other than counsel and their representatives serves any purpose except to give a tactical edge to the party who has obtained discovery of the information by allowing that party the benefit of pressure in settlement negotiations by threat or implication of disclosure.

■ We hence conclude that where a party is compelled in civil discovery to reveal financial information because the information is relevant to the subject matter of a claim for punitive damages, that party is, upon his motion, presumptively entitled to a protective order that the information need be revealed only to counsel for the discovering party or to counsel's representative, and that once so revealed, the information may be used only for the purposes of the lawsuit. The burden is upon the opposing party to establish a substantial reason why the order should be denied. That reason must be related to the lawsuit.

Here, while the trial court had invited petitioners to submit a proposed protective order and one was submitted by petitioners prior to the hearing of September 6 incorporating the protection to which petitioners were entitled, the trial court did not issue the order. Real parties in interest made no showing in opposition to it. The trial court's failure to grant the protective order was thus an abuse of its discretion.

■ Petitioners assert a further proposition. The argue that because of a constitutional right to privacy of financial affairs declared in *City of Carmel-by-the-Sea* v. *Young* (1970) 2 Cal.3d 259 [85 Cal.Rptr. 1, 466 P.2d 225, 37 A.L.R.3d 1313] and California Constitution, article I, section 1, disclosure in civil discovery of financial information relevant to the subject matter of punitive damages may be required only if there is some substantial showing that the party seeking the information will in fact recover punitive damages.

*Carmel-by-the-Sea* does not declare an absolute right of privacy which precludes disclosure of financial information. Rather, it limits the obligation of disclosure to situations in which the information is relevant to the public purpose for which it is required. (*City of Carmel-by-the-Sea, supra,* 2 Cal.3d at p. 272.) ■ The right of privacy now incorporated expressly in article I, section 1 of the California Constitution exists to prevent governmental "snooping," to inhibit the overly broad collection and retention of unnecessary personal information, the improper use of information properly obtained for a specific purpose, and to avoid the evils incident to lack of a reasonable check on the accuracy of existing records. (5 Witkin, Summary of Cal. Law (8th ed., 1978 supp.) Constitutional Law, § 274A, p. 126.)

■ The disclosure of financial information in civil discovery related to a cause of action seeking punitive damages presents a situation where the disclosure to counsel for the parties for the purposes of the lawsuit is relevant to the public purpose served by judicial dispute resolution. So long as the disclosure is so limited, none of the evils to which the California constitutional declaration of the right of privacy is addressed are present. (See *Valley Bank of Nevada* v. *Superior Court* (1975) 15 Cal.3d 652 [125 Cal.Rptr. 553, 542 P.2d 977].) So long as the disclosure is limited by a properly fashioned protective order, the invasion into privacy is held within the limits required by *Carmel-by-the-Sea.* (*Valley Bank of Nevada* v. *Superior Court, supra,* 15 Cal.3d 652, 658.)

We order that a writ of mandate issue directing the trial court to vacate its order of September 6, 1978, and to issue a new order which: (1) recognizes that petitioners have now served and filed their answers to the interrogatories; and (2) provides that the responses to interrogatories and financial statements here involved shall be disclosed only to counsel for real parties in interest or to their representatives and shall be used only for the purpose of the lawsuit at bench.

Lillie, Acting P. J., and Files, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.