[No. AO24002. First Dist., Div. Three. Feb. 6, 1984.]

GT, INC., et al., Petitioners, v.
THE SUPERIOR COURT OF SANTA CRUZ COUNTY, Respondent;
SANTA CRUZ SENTINEL PUBLISHERS, INC., et al.,
Real Parties in Interest.

COUNSEL

Ashley M. Winn for Petitioners.

No appearance for Respondent.

F. Bruce Dodge, Paul T. Friedman, Tracy L. Salisbury and Morrison & Foerster for Real Parties in Interest.

OPINION

**BARRY-DEAL, J.**—This petition challenges a protective order that prevents petitioners' attorney from showing discovered financial information to petitioners. We conclude that (1) where good cause is shown, a trial court may prevent a party from viewing financial information even where the financial information is pertinent to the merits of the lawsuit, and (2) the order here was entered for good cause. We deny the petition.

Both sides in this dispute are Santa Cruz County publishers. Each published a direct-mail shopper for a few months during 1981. Petitioners were the first to do so. Real parties, who also publish the daily paper, the Santa Cruz Sentinel, began four months later. It is alleged by petitioners that real parties (also called the Sentinel herein) drove them out of business by predatory pricing of their advertisements.

Real parties were the first to sue, filing an action for declaratory relief on April 16, 1982, seeking a declaratory judgment that they had not violated state law in pricing their advertising. Petitioners filed an antitrust complaint on September 21, 1982, alleging unfair competition, including underpricing advertising. By stipulation, the two actions were consolidated for all further proceedings.

During the course of discovery, petitioners asked real parties to identify "each financial statement, profit and loss statement, balance sheet, financial projection documents, and general ledgers for the past five years for both

the Sentinel and Shopping News [real parties' direct-mail shopper]." Before real parties responded, petitioners agreed to a protective order which restricted the use of each party's documents to the preparation for and trial of the case. The Sentinel responded to the interrogatory by agreeing to produce the requested financial documents of the Shopping News, but objected that the Sentinel's financial records were not relevant.

Petitioners moved to compel further responses, arguing that the Sentinel's records were needed in light of the assertion by the Sentinel that the relevant price for the Shopping News ad was a combination rate given to advertisers placing ads in both the Sentinel and the Shopping News. Petitioners contended that in order to determine costs and profits with respect to this alleged "'combination rate,'" petitioners needed to examine the Sentinel's financial records too. In response to the motion to compel, the Sentinel again argued that the information was not relevant and contended that the information sought was confidential and proprietary. However, it did agree to produce "the financial records necessary to compute the (approximately) $6.00 combination ad rate figure."

The Sentinel later altered its agreement to produce by imposing the condition that only petitioners' attorney and accountant, not petitioners themselves, would have access to the financial information. Petitioners again moved to compel answers or alternatively for an order precluding the Sentinel from presenting its argument concerning the combined ad rate. The Sentinel opposed the motion, arguing for a protective order which limited disclosure to counsel and petitioners' expert. The Sentinel argued that under *Richards* v. *Superior Court* (1978) 86 Cal.App.3d 265, 272-273 [150 Cal.Rptr. 77], petitioners had the burden of showing why such a protective order should not issue. After hearing, the court issued its discovery order requiring the Sentinel to produce documents "reflecting whether the alleged 'combination ad product' was sold above or below cost," but specifying that that information would be produced only to "attorneys and accountants for" petitioners. This petition followed.

Petitioners contend that the trial court's protective order was an act in excess of the court's jurisdiction because it interferes with agent/principal relationship between attorney and client, contradicts the rationale of the attorney-client privilege by preventing open communication, and denies petitioners due process by interfering with their preparation for trial.[1]

---

[1] In passing, petitioners complain about the fact that the order permits the Sentinel to determine which documents to present and forces petitioners to bring another motion to compel if not satisfied with the voluntary production. However, they do not directly attack that aspect of the order. They concentrate on the limitation on who can review the financial information.

Real parties argue that the protective order was authorized by Code of Civil Procedure section 2019, subdivision (b)(1), by state court decisions (e.g., *Moskowitz* v. *Superior Court* (1982) 137 Cal.App.3d 313 [187 Cal.Rptr. 4]; *Richards* v. *Superior Court, supra,* 86 Cal.App.3d 265), and by numerous federal decisions.

Code of Civil Procedure section 2019, subdivision (b)(1), provides, inter alia, that a court may "for good cause shown" make any order ". . . which justice requires to protect the party or witness from annoyance, embarrassment, or oppression. . . ." Article I, section 1 of the California Constitution declares that the right to privacy is "inalienable." Those two provisions, separately or in concert, have led appellate courts of California to approve various protective orders for financial information.

In *Richards* v. *Superior Court, supra,* 86 Cal.App.3d 265, a tort action with a prayer for punitive damages, the trial court rejected a protective order that proposed to restrict financial information about defendants to examination by counsel for plaintiff and use only in preparation for trial of the subject lawsuit. The *Richards* court noted that defendants' financial conditions were pertinent only to the punitive damage issue and concluded that ". . . where a party is compelled in civil discovery to reveal financial information because the information is relevant to the subject matter of a claim for punitive damages, that party is, upon his motion, presumptively entitled to a protective order that the information need be revealed only to counsel for the discovering party or to counsel's representative, and that once so revealed, the information may be used only for the purposes of the lawsuit. The burden is upon the opposing party to establish a substantial reason why the order should be denied. That reason must be related to the lawsuit." (*Id.,* at p. 272.)

*Richards* was followed in *Martin* v. *Superior Court* (1980) 110 Cal.App.3d 391 [167 Cal.Rptr. 811], and then extended in *Moskowitz* v. *Superior Court, supra,* 137 Cal.App.3d 313. In *Moskowitz,* the party seeking the protective order was a plaintiff, not a defendant. He was suing his former attorney for malpractice, and to support the theory of his complaint, he alleged that he was unable to obtain a bond to stay execution of judgment pending appeal and was therefore compelled to pay $1.75 million to settle the case. Defendants sought disclosure of plaintiff's financial affairs for the past 20 years. The trial court denied plaintiff's request for a protective order. The *Moskowitz* court ruled that, under *Richards,* plaintiff was presumptively entitled to a protective order and that real parties failed to rebut that presumption. The *Moskowitz* court observed the distinctions that the protective order there was sought by the plaintiff and that the financial information related to the cause of action, not to punitive damages. Never-

theless, it ruled that the presumption of entitlement should apply even where plaintiff put in issue his financial condition. The court explained: "Petitioner argues that he is presumptively entitled to a protective order limiting dissemination of the financial information contained in his deposition, and the burden therefore was on real parties to show that such relief is not warranted. In support of this contention petitioner cites *Richards* v. *Superior Court* [*supra*], 86 Cal.App.3d 265 [150 Cal.Rptr. 77], wherein this court held: '[W]here a party is compelled in civil discovery to reveal financial information because the information is relevant to the subject matter of a claim for punitive damages, that party is, upon his motion, presumptively entitled to a protective order that the information need be revealed only to counsel for the discovering party or to counsel's representative, and that once so revealed, the information may be used only for the purposes of the lawsuit. The burden is on the opposing party to establish a substantial reason why the order should be denied. That reason must be related to the lawsuit.' (P. 272.) While the protective order in *Richards* was sought by a defendant against whom a claim for punitive damages was asserted, we think the holding of that case is applicable here, for even though petitioner (the plaintiff) himself put in issue his financial worth, he thereby waived his constitutional right of privacy only to the extent necessary for a fair resolution of the action. (*Britt* v. *Superior Court* [1978], 20 Cal.3d 844, 859 [143 Cal.Rptr. 695, 574 P.2d 766].) Moreover, as we observed in *Richards:* 'Discovery seeking financial information by reason of a claim for punitive damages is one classic instance of the manner in which civil discovery is used to achieve a litigation advantage never contemplated when the methodology was introduced into pretrial procedure. . . . [T]here is usually the potential that untoward disclosure of the information obtained may in some way or other react adversely against the disclosing party for reasons totally unrelated to the lawsuit. The possibilities run all the way from greater exposure to the not so gentle solicitations of some charitable organizations to the possibility of damage to the discloser in the competitive business arena. . . . [¶] . . . It seems a rare instance indeed that the potential of disclosure for purposes unrelated to the lawsuit or to persons other than counsel and their representatives serves any purpose except to give a tactical edge to the party who has obtained discovery of the information by allowing that party the benefit of pressure in settlement negotiations by threat or implication of disclosure.' (*Richards* v. *Superior Court, supra,* 86 Cal.App.3d at pp. 271, 272.) The foregoing considerations are relevant whether it is the plaintiff or the defendant who seeks a protective order limiting to legitimate purposes the use of his personal financial information obtained through discovery. Accordingly, we conclude that the burden was upon real parties to establish a reason, related to the lawsuit, for denial of the protective order sought by petitioner." (*Moskowitz* v. *Superior Court, supra,* 137 Cal.App.3d at pp. 317-318.)

Whether *Moskowitz* is a warranted extension of *Richards* is impossible to assess, because the *Moskowitz* court failed to specify what kind of protective order was sought. If the trial court there denied a protective order that sought only to limit disclosure to those involved in the lawsuit, a presumption in plaintiff's favor would seem warranted. However, if he sought to prevent defendants themselves from examining his financial information (which may well be the case),[2] application of the *Richards* presumption may have been improper. A protective order is easy to justify where financial information is needed for punitive damages, because the client has little need to know the information when preparing his case on the liability question. However, where the financial information goes to the heart of the cause of action itself, a litigant should not be denied access so easily.

■ Code of Civil Procedure section 2019, subdivision (b) (1), allows a party to seek a protective order upon a showing of "good cause." A presumption that good cause exists should be indulged only if circumstances warrant. In *Richards,* the court observed that there would rarely be a purpose for disclosing punitive damage discovery for purposes unrelated to the lawsuit or to persons other than counsel or their representatives "except to give a tactical edge to the party who has obtained discovery of the information by allowing that party the benefit of pressure in settlement negotiations by threat or implication of disclosure." (*Richards* v. *Superior Court, supra,* 86 Cal.App.3d at p. 272.) The same cannot be said of financial information related to the cause of action and its disclosure to a litigant. There will often be a legitimate need for the information, and rarer would be the occasion for misuse. Any implication to the contrary in *Moskowitz* notwithstanding, we conclude that the presumption does not apply to the situation present here. Instead, the party seeking the protective order is required to meet the usual burden of showing "good cause."[3]

---

[2]The court left some clues about the nature of the protective order plaintiff sought, but those clues are difficult to interpret. At one point, the court observed that plaintiff "seeks only to prevent disclosure of the personal financial information . . . to persons who have no legitimate interest in its use for purposes of the litigation." (*Moskowitz* v. *Superior Court, supra,* 137 Cal.App.3d 313, 316.) Elsewhere, the court's discussion suggested that the proposed protective order would have prevented disclosure by attorneys to the insurance carriers who were providing for the defense of the case. (*Id.,* at pp. 318-319.) And extensive reliance upon *Richards* suggests that the protective order may have proposed the same restrictions approved there.

[3]Real parties' compendium of federal cases where protective orders were entered does not deter us from imposing the good cause requirement upon real parties. Federal Rule of Civil Procedure, rule 26(c) (28 U.S.C.) permits a protective order "for good cause shown," and none of the authorities quoted by real parties suggests that a presumption of good cause can replace the required showing. The mere fact that federal courts often issue protective orders such as the one entered here does not mean that those courts are any less protective of the good cause requirement than we believe state courts should be.

■ Petitioners advance the suggestion that even a showing of good cause should not permit a trial court to impose a " 'counsel only' " protective order where the discovery relates to the merits of the claim. However, no such limitation has been placed upon the broad authority granted by the Legislature in Code of Civil Procedure section 2019, subdivision (b)(1). Such a restriction upon protective orders would invite misuse of antitrust proceedings to obtain information about competitors or other legal proceedings to obtain trade secrets or other confidential information. The "good cause" standard enables the trial court to distinguish between proper use of discovery and misuse of discovery and to treat each in the appropriate manner.

■ Petitioners contend that the trial court abused its discretion in issuing a protective order without a showing of good cause. They point out that neither at or before the August 19, 1983, hearing did the Sentinel produce evidence, through affidavits, declarations, or sworn testimony, showing any facts in support of their request. They note that the only showing made was the following statement in the Sentinel's opposition papers: "In the context of this case, where cross-complainants GT, Inc. and Jay Shore are ongoing competitors of the Sentinel, the proper balance between the Sentinel's rights and GT/Shore's rights should result in the entry of a protective order that, *inter alia,* limits disclosure of the Sentinel's proprietary financial information to GT/Shore's counsel and expert." (Fn. omitted.)

Real parties do not point to any evidence of "good cause" presented to the trial court. They merely assert that Judge Brauer "was and is intimately familiar with the underlying litigation . . . [and that he] heard lengthy arguments . . . and successfully incorporated in [the] order a proper balance between the Sentinel's right to have its privacy protected against unnecessary intrusion into its financial affairs, as well as its interest in minimizing the damage it will suffer in the competitive arena due to disclosure of proprietary information, and petitioners' right to legitimate discovery."

We have examined closely the partial transcript of the hearing below and concluded that the trial court's protective order is supported by good cause. Throughout the proceedings, the trial judge revealed that he understood the law on protective orders and that he agreed that the evidence sought was directly relevant to issues in the lawsuit. He explained his concern that the information, in the hands of a competitor, could be improperly used. Focusing specifically upon this lawsuit, he explained that ". . . as a matter of spite, . . . I can't exclude [the possibility petitioner would misuse the information], because he's angry, and I don't blame him for being angry. He thinks he has been hurt by these people, you see. He believes that he has

been shafted, in the vernacular . . . . There is a great deal of animus here . . . ."

■ Our review here is hindered by the fact that the reporter was excused from transcribing the critical sequence of arguments on the motion. Thus, on the record before us there is no indication that petitioner objected to the evidentiary basis for the court's conclusion that the protective order was justified by the risk of misuse. In fact, there is no indication that petitioner challenged even the court's conclusions about the danger of misuse. The burden of producing an adequate record for review was upon petitioner. (See *Lemelle* v. *Superior Court* (1978) 77 Cal.App.3d 148, 156 [143 Cal.Rptr. 450].) We must presume correctness of the trial court's order and, absent a showing to the contrary, that petitioner failed to object to the evidentiary basis for the trial court's conclusion regarding good cause. Based upon those presumptions, we sustain the trial court's order.[4]

The alternative writ is discharged, and the petition for a peremptory writ is denied.

Scott, Acting P. J., and Feinberg, J., concurred.

---

[4]Our ruling does not bar petitioners from seeking relief from the protective order if, after disclosure to accountant and attorney, counsel concludes that if his clients knew the information, it might resolve the case (e.g., could cause abandonment or settlement). Under such circumstances counsel could seek an *in camera* hearing to determine whether some form of disclosure to the clients would be warranted. We do not decide whether or under what circumstances such disclosure should take place. We merely point out the procedure for seeking relief from the protective order.