[Civ. No. 30293. Fourth Dist., Div. Three. July 31, 1984.]

REGISTER DIVISION OF FREEDOM NEWSPAPERS, INC.,
Plaintiff and Respondent, v.
COUNTY OF ORANGE, Defendant and Appellant.

894

## COUNSEL

Adrian Kuyper, County Counsel, and Daniel J. Didier, Deputy County Counsel, for Defendant and Appellant.

Helsing & Rockwell, Duffern H. Helsing and Peter C. Freeman for Plaintiff and Respondent.

## OPINION

**TROTTER, P. J.**—County of Orange (County) appeals an order requiring it to disclose to The Register Division of Freedom Newspapers, Inc. (The Register), certain documents regarding a secret settlement agreement reached between the County and Michael T. Clemens, a tort claimant.

I

Clemens filed a claim against the County in accordance with section 945.4 of the Government Code.[1] He alleged his throat was slashed by a fellow

---

[1]All statutory references are to the Government Code unless otherwise specified.

Section 945.4 provides in relevant part: ". . . no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required . . . until a written claim therefor has been presented to the public entity. . . ."

inmate while incarcerated at the Orange County Jail. Clemens, a convicted child molester, charged the County negligently transferred him from his protective custody cell into a cellblock with other inmates where it was likely he would be harmed. County counsel referred his claim to the county administrative office's risk management staff who in turn asked the sheriff to investigate the claim. In September of 1982, Clemens' attorney wrote to the County requesting settlement, and attached copies of Clemens' medical records. Upon completion of the investigation, the claim was referred to the County's claims settlement committee[2] which discussed and approved the settlement offer at a secret meeting held on October 11, 1982. Subsequently, several warrant stubs were issued to Clemens by the county controller's office. On October 22, 1982, Clemens signed a document releasing the County of "all claims" against it.

In January of 1983, The Register requested access to the settlement documents, but was refused. It then petitioned the superior court for an order compelling disclosure of the records pursuant to the California Public Records Act (hereafter CPRA). (§§ 6250-6265.) The petition also asked the court to declare a constitutional right of public access to the records based on First and Fourteenth Amendment grounds.

The court ordered the County to provide The Register with copies of each of the documents contained in the settlement file, as described in the County's response.[3] The disclosure order was based on *both* constitutional (U.S.

---

[2]Pursuant to section 935.2, the Orange County Board of Supervisors has delegated to the claims settlement committee authority to settle all nonhospital or medical malpractice claims filed against the county exceeding $20,000. (Orange County Bd. of Supervisors Res. No. 82-1364, 9/14/82.) The county's claim settlement committee is ordinarily composed of three members representing the general services agency, the county counsel and the county administrative office. A representative of the agency or department against whom the claim is directed is also required to be present during committee meetings but is not entitled voting privileges regarding the settlement. Present at the October 11, 1982 meeting were the committee members and representatives from the sheriff and risk management offices.

[3]The following is the list of settlement documents submitted to the court by the County:
1. "Claim against County, dated August 13, 1982."
2. "Letter to Claimant's attorney from County Counsel that Claim had been received, dated August 23, 1982."
3. "Letter to Risk Management Services from County Counsel that Claim had been filed, and to investigate, dated August 3, 1982."
4. "Memorandum from Risk Management Services to Sheriff to investigate Claim, dated August 26, 1982."
5. "Memorandum from Sheriff containing requested investigation, dated September 8, 1982."
6. "Crime Report #664/187 relating to May 28, 1982 incident in Orange County Jail."
7. "Letter from insurance company as to Annuity Plan, dated September 21, 1982."
8. "Letter from Claimant's attorney, requesting settlement, with attached medical rec-

Const., 1st and 14th Amends.) and statutory grounds. (CPRA and Brown Act.).[4]

County argues the trial court erroneously relied upon constitutional grounds and ignored statutory exemptions from disclosure under section 6254[5] for certain documents: The sheriff investigation and crime reports (docs. 5 & 6, § 6254, subds. (f) and (k)); Clemens' medical records enclosed with his attorney's settlement request letter (doc. 8, § 6254, subd.

---

ords, dated September 28, 1982."

9. "Letter from insurance company as to Annuity Plan, dated October 1, 1982."

10. "Minutes of Claims Settlement Committee, dated October 11, 1982."

11. "Request for warrants to Auditor/Controller and cover memorandum from Risk Management Services, all dated October 13, 1982."

12. "Confirming letter of settlement to Claimant's attorney, dated October 13, 1982."

13. "Warrant stubs (2) dated October 15, 1982 and October 19, 1982."

14. "Document entitled Release of all Claims, signed by Claimant and his attorney and cover letter from Claimant's attorney dated October 22, 1982."

15. "Annuity Policy and cover letter from insurance company, dated December 7, 1982."

16. "Action and memo sheet (rough notes by Risk Management Staff) not dated."

At the hearing held on The Register's petition, County agreed to allow The Register access to documents 1-4. Accordingly, this opinion only deals with accessibility to the remaining 14 documents.

[4]In its nine page order the court stated the County's failure to disclose the settlement documents "flies directly in the face of constitutional and statutory guarantees." Citing *Richmond Newspapers, Inc.* v. *Virginia* (1980) 448 U.S. 555 [65 L.Ed.2d 973, 100 S.Ct. 2814], the court stated the press' right to know how public money is being spent can only be blocked if the government shows "an overriding interest," which the County had not satisfied. Thus, the court concluded: "[t]he County's asserted exemption under both the PRA and the Brown Act must be considered not only in the context of those acts, but like all other such legislation be juxtaposed with the Constitution. The Court is convinced that when so considered, especially in light of a strong public policy favoring disclosure, production or access is mandated."

[5]Section 6254 provides in relevant part: "Except as provided in Section 6254.7, nothing in this chapter shall be construed to require disclosure of records that are any of the following:

"(a) Preliminary drafts, notes, or interagency or intraagency memoranda which are not retained by the public agency in the ordinary course of business, provided that the public interest in withholding such records clearly outweighs the public interest in disclosure.

" . . . . . . . . . . . . . . . . . . . .

"(c) Personnel, medical, or similar files, the disclosure of which would constitute an unwarranted invasion of personal privacy.

" . . . . . . . . . . . . . . . . . . . .

"(f) Records of complaints to or investigations conducted by . . . any state or local police agency . . . for correctional, law enforcement or licensing purposes. . . .

" . . . . . . . . . . . . . . . . . . . .

"(k) Records the disclosure of which is exempted or prohibited pursuant to provisions of federal or state law, including, but not limited to, provisions of the Evidence Code relating to privilege.

" . . . . . . . . . . . . . . . . . . . .

"Nothing in this section is to be construed as preventing any agency from opening its records concerning the administration of the agency to public inspection, unless disclosure is otherwise prohibited by law."

(c)); and the rough undated notes made by risk management staff (doc. 16, § 6254, subd. (a)). County further asserts the minutes of the claims settlement committee meeting (doc. 10) are exempt from disclosure under section 54957.2 of the Brown Act,[6] while the remaining settlement documents—pertaining to the annuity policy (docs. 7, 9 & 15), request for warrants and warrant stubs (docs. 11 & 13), and confirmation of settlement and settlement agreement (docs. 12 & 14)—are exempt from disclosure under section 6255[7] since the public interest in disclosure is outweighed by the public interest in nondisclosure.

Lastly, County argues the trial court failed to inspect all the settlement documents *in camera* prior to ordering their disclosure and thus abused its discretion under the provisions of section 6259.[8]

## II

■ We find that a newspaper has no special constitutional right of access to the settlement records of the County. No California or federal judicial decision has ever attributed accessibility to public records upon First Amendment freedoms of speech or press. (*San Gabriel Tribune* v. *Superior Court* (1983) 143 Cal.App.3d 762, 774 [192 Cal.Rptr. 415]; see also *Estate of Hearst* (1977) 67 Cal.App.3d 777, 785-786 [136 Cal.Rptr. 821]; Accord, *Houchins* v. *KQED, Inc.* (1978) 438 U.S. 1, 15 [57 L.Ed.2d 553, 565].) Thus, to the extent the lower court's disclosure order was grounded on First Amendment considerations, it was erroneous. The court, however, also based its ruling on the CPRA and Brown Act. We now turn to these statutory provisions.

---

[6]Section 54957.2 of the Brown Act provides in pertinent part: "(a) The legislative body of a local agency may . . . designate a clerk or other . . . employee . . . who shall then attend each closed session of the legislative body and keep and enter in a minute book a record of topics discussed and decisions made at the meeting. The minute book made pursuant to this section is not a public record subject to inspection pursuant to the California Public Records Act . . ., and shall be kept confidential. . . ."

[7]Section 6255 provides as follows: "The agency shall justify withholding any record by demonstrating that the record in question is exempt under express provisions of this chapter or that on the facts of the particular case the public interest served by not making the record public clearly outweighs the public interest served by disclosure of the record."

[8]Section 6259 provides in material part: "Whenever it is made to appear by verified petition to the superior court of the county where the records . . . are situated that certain public records are being improperly withheld from a member of the public, the court shall order the officer or person charged with withholding the records to disclose the public record or show cause why he should not do so. The court shall decide the case after examining the record in camera, if permitted by subdivision (b) of Section 915 of the Evidence Code, papers filed by the parties and such oral argument and additional evidence as the court may allow."

■ The CPRA, enacted in 1968, was intended to safeguard the accountability of government to the public. (*San Gabriel Tribune* v. *Superior Court, supra,* 143 Cal.App.3d at p. 771.) Section 6250 of the act declares: "[i]n enacting this chapter, the Legislature, mindful of the right of individuals to privacy, finds and declares that access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state." The general policy of the CPRA favors disclosure. (*Cook* v. *Craig* (1976) 55 Cal.App.3d 773, 781 [127 Cal.Rptr. 712].) Accordingly, support for a claim of nondisclosure "must be found, if at all, among the specific exceptions to the general policy that are enumerated in the Act." (*State of California* ex rel. *Division of Industrial Safety* v. *Superior Court* (1974) 43 Cal.App.3d 778, 783 [117 Cal.Rptr. 726].)

■ The CPRA defines "public records" as "any writing containing information relating to the conduct of the public's business prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics." (§ 6252, subd. (d).) "Local agency" is defined to include "a county; city . . .; political subdivision; or any board, commission or agency thereof; . . . ." (§ 6252, subd. (b).) Thus, the County's claims settlement committee is a "local agency" under the CPRA and the documents relating to settlement of a private personal injury claim with public funds constitute "writings" containing information regarding "the conduct of the public business," subject to public inspection and disclosure under the CPRA. (§§ 6253, 6256.)

III

■ To determine a claim of exemption from the CPRA's disclosure provisions, the court may but is *not* required to examine the disputed records *in camera.* Section 6259 provides the "court shall decide the case after examining the record *in camera, if permitted by subdivision (b) of Section 915 of the Evidence Code,* papers filed by the parties and such oral argument and additional evidence as the court may allow." (Italics added.) However, the *in camera* hearing provisions of Evidence Code section 915, subdivision (b) are permissive.[9] (*People* v. *Superior Court (Biggs)* (1971) 19 Cal.App.3d 522, 531 [97 Cal.Rptr. 118].) Thus, under section 6259 "*in camera* inspection of the record in question is not required as a matter of law, but is trusted to the sound discretion of the trial court." (*Yarish* v. *Nelson* (1972) 27 Cal.App.3d 893, 904 [104 Cal.Rptr. 205].) Guided by

[9]Evidence Code section 915, subdivision (b) provides in relevant part: "When a court is ruling on a claim of privilege . . . and is unable to do so without requiring disclosure of the information claimed to be privileged, the court *may* require the person from whom disclosure is sought . . . to disclose the information in chambers. . . ."

these principles, we examine each of County's exemption claims and whether the court's failure to conduct an *in camera* inspection of each of the disputed settlement documents constituted an abuse of discretion.

## A. *Medical Records*

Clemens' medical records were appended to a letter written by Clemens' attorney to the County requesting settlement of the claim (doc. 8). ■ County claims they are exempt from disclosure under subdivision (c) of section 6254 (fn. 5, *ante*), since they were submitted to substantiate Clemens' personal injury claim and not for the purpose of making them public. Thus disclosure of these records would constitute "an unwarranted invasion of personal privacy" within the meaning of section 6254, subdivision (c). We disagree.

CPRA provisions evidence legislative concern with "two fundamental if somewhat competing societal concerns—prevention of secrecy in government and protection of individual privacy." (*Black Panther Party* v. *Kehoe* (1974) 42 Cal.App.3d 645, 651 [117 Cal.Rptr. 106]; see § 6250.) While the "right to know" is centered upon the need for openness in the management of governmental affairs, "[s]ocietal concern for privacy focuses on minimum exposure of personal information collected for governmental purposes." (*Ibid.*) The purpose of the exemption for private records embodied in subdivision (c) of section 6254 is to ". . . 'protect information of a highly personal nature which is on file with a public agency . . . [to] typically apply to public employee's personnel folders or sensitive personal information which individuals *must* submit to government.'" (*San Gabriel Tribune* v. *Superior Court, supra,* 143 Cal.App.3d at p. 777, citing A Final Rep. Cal. Statewide Information Policy Com. Rep. (Mar. 1970) pp. 9-10, 1 Appen. to J. of the Assem. (1970, Reg. Sess.), italics added.)

The medical records enclosed in Clemens' letter requesting settlement, although private in nature, were *voluntarily* submitted to substantiate Clemens' personal injury claim. Their disclosure was to further his private interest, to settle the case, not to accomplish any governmental purpose or goal. By making his personal injury claim, Clemens placed his alleged physical injuries, and medical records substantiating the same, in issue. Furthermore, by voluntarily submitting these records to the County for the purpose of reaching a settlement on his claim, Clemens tacitly *waived* any expectation of privacy regarding these medical records. Similarly, the County utilized these supporting medical records in arriving at its decision to settle the claim. It cannot now hide behind Clemens' "privacy" claim to justify its concealment of these records from public scrutiny. (Cf. *San Ga-*

*briel Tribune* v. *Superior Court, supra,* 143 Cal.App.3d 762, 778, holding section 6254, subdivision (k) inapplicable to private utility company's financial data serving as the basis for governmental decision to approve a rate increase benefiting the company.)

We hold the "medical records" exemption under section 6254, subdivision (c) does not apply. In so holding we note the trial court did not abuse its discretion by failing to examine these records *in camera,* since it was uncontroverted the records related only to Clemens' allegations of personal injury stemming from the jail incident.[10]

## B. *Investigation Reports*

County claims two documents prepared by the sheriff's office (docs. 5 & 6) are protected from disclosure under subdivisions (f) and (k) of section 6254. (Fn. 5, *ante.*) One contains the sheriff's investigation report regarding the throat slashing incident requested by the County's risk management office; the other document is a crime report of attempted homicide on the incident. We first address County's exemption claim under subdivision (f).

Subdivision (f) exempts from disclosure records of complaints or investigations conducted "for correctional, law enforcement or licensing purposes." It also provides, however, exceptions *allowing* disclosure of specific information contained in investigative files as follows: (1) Specified information from records of incidents involving bodily injury, property damage or loss must be disclosed to the victims (or their authorized representative), to an insurance carrier against whom a claim is made, and to any person suffering the resulting injury; (2) specified information regarding every arrest made by law enforcement agencies; (3) specified information regarding all "complaints or requests for assistance" received by these agencies. Disclosure under these exceptions is *not* required, however, if it "would endanger the safety of a person involved in the investigation, or . . . the successful completion of the investigation or a related investigation. . . ." Moreover, "disclosure of that portion of . . . investigative files which reflect the analysis or conclusions of the investigating officer" is not allowed. (§ 6254, subds. (f),(1)(2); see 65 Ops.Cal.Atty.Gen. 563, 566-567 (1982).)

■ The Register claims the sheriff's investigation report does not fall within subdivision (f)'s exemption because it was *not* conducted for "cor-

---

[10]We note County does not argue nor does the record support a contrary inference. No allegation has been made that the disputed medical records deal with a separate or unrelated medical condition.

rectional, law enforcement or licensing purposes," but was instead conducted at the request of the County's risk management office primarily for the purpose of ascertaining the facts in much the same way investigations are undertaken by insurance company claim adjustors. Thus, the sheriff's investigation was not for law enforcement purposes, but rather to discover the facts upon which to determine the County's civil liability stemming from the incident.

We agree. The record reflects the sheriff's investigation *was* undertaken at the County's instance to determine the validity of Clemens' tort liability claim. Thus, the sheriff's report does *not* fall within the "correctional, law enforcement or licensing" exemption under subdivision (f). Moreover, even assuming arguendo the sheriff's report *might* have law enforcement implications, subdivision (f) is applicable *only* when the prospect of law enforcement is "concrete and definite." (*Uribe* v. *Howie* (1971) 19 Cal.App.3d 194, 212, 213 [96 Cal.Rptr. 493]; see also *State of California* ex rel. *Division of Industrial Safety* v. *Superior Court, supra,* 43 Cal.App.3d at p. 784.) No such showing was made below.

■ We now turn to subdivision (f)'s applicability to the disputed crime report of attempted homicide. While this report falls within subsection (f)'s "law enforcement" exempted category, it, however, also falls within one of subdivision (f)'s enumerated exceptions, requiring disclosure of information regarding "complaints or requests for assistance . . . to the extent such information regarding crimes alleged or committed . . . is recorded. . . ." (§ 6254, subd. (f)(2).) Thus the crime report should be made public insofar as it contains the specified crime information listed in subdivision (f)(2)[11] provided disclosure does not "endanger the safety of a person involved in [the] investigation or . . . endanger the successful completion of the investigation or a related investigation." (§ 6254, subd. (f).)

The trial court ordered the crime report disclosed without first determining whether disclosure would endanger the safety of an investigator or hamper completion of the instant or a related investigation. We find *in camera* inspection of the disputed crime report is necessary in order to make this determination. Accordingly, we remand for such a factual determination.

County additionally argues the disputed sheriff and crime reports are exempted from disclosure under subdivision (k) of section 6254 which protects

---

[11]The specific information subject to disclosure under subdivision (f)(2) includes: ". . . the time, date and location of occurrence, the time and date of the report, the name, age and current address of the victim . . . the factual circumstances surrounding the crime or incident, and a general description of any injuries, property or weapons involved."

disclosure of records already exempted under federal or state law, including records privileged under the Evidence Code. (Fn. 5, *ante.*) County specifically claims the investigation reports contained in the settlement file fall within the "official information" privilege provided by section 1040 of the Evidence Code.[12] It maintains the reports are either absolutely privileged under section 1040, subdivision (b)(1), or conditionally privileged under section 1040, subdivision (b)(2).

■ Preliminarily, we note section 1040 of the Evidence Code "represents the *exclusive means* by which a public entity may assert a claim of governmental privilege based on the necessity for secrecy." (*Pitchess* v. *Superior Court* (1974) 11 Cal.3d 531, 540 [113 Cal.Rptr. 897, 522 P.2d 305], italics added.) "It essentially establishes two different privileges—an absolute privilege if disclosure is forbidden by a federal or state statute (subd. (b)(1)), and a conditional privilege in all other cases pursuant to which privilege attaches when the court determines, in accordance with precise statutory standards, that disclosure is against the public interest (subd. (b)(2).)" (*Shepherd* v. *Superior Court* (1976) 17 Cal.3d 107, 123 [130 Cal.Rptr. 257, 550 P.2d 161].) Moreover, either privilege is applicable only to "information acquired in confidence." (Evid. Code, § 1040, subd. (a).)

County's claim of absolute privilege is based on its view section 6254, subdivision (f) of the CPRA (fn. 5, *ante*) constitutes a statutory enactment forbidding disclosure of the investigation report. We disagree. ■ The exemptions from disclosure provided by section 6254 are "permissive, *not* mandatory; they permit nondisclosure but do not prohibit disclosure." (*Black Panther Party* v. *Kehoe, supra,* 42 Cal.App.3d at p. 656, italics added.) The permissive nature of section 6254's exemptions is clearly evi-

---

[12]Section 1040 of the Evidence Code provides in full: "(a) As used in this section, 'official information' means information acquired in confidence by a public employee in the course of his duty and not open, or officially disclosed, to the public prior to the time the claim of privilege is made.

"(b) A public entity has a privilege to refuse to disclose official information, and to prevent another from disclosing such information, if the privilege is claimed by a person authorized by the public entity to do so and:

"(1) Disclosure is forbidden by an act of the Congress of the United States or a statute of this state; or

"(2) Disclosure of the information is against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice; but no privilege may be claimed under this paragraph if any person authorized to do so has consented that the information be disclosed in the proceeding. In determining whether disclosure of the information is against the public interest, the interest of the public entity as a party in the outcome of the proceeding may not be considered."

denced by its last paragraph which states: "Nothing in this section is to be construed as preventing any agency from opening its records concerning the administration of the agency to public inspection, unless disclosure is otherwise prohibited by law." We hold section 6254 of the CPRA does *not forbid* disclosure of the subject investigation reports. Since disclosure is not otherwise forbidden by any state or federal laws, subsection (b)(1)'s absolute privilege is unavailable to the County.

County claims the necessity for preserving the confidentiality of the investigation reports outweighs the necessity for disclosure. It asserts confidentiality is necessary to insure cooperation by public employees with similar internal investigations in the future. However, we find disclosure of the sheriff's investigation reports to be necessary in evaluating the County's decision to settle the claim with public funds. Further, in determining whether disclosure of the reports is against public interest the interest of the public entity as a party in the outcome may not be considered. (Evid. Code, § 1040, subd. (b)(2).)

County argues since it has the burden to show the "official information" privilege (Evid. Code, § 1040) to be applicable, and an *in camera* hearing pursuant to Evidence Code section 915, subdivision (b) is the *only* means available to it to meet its burden, failure to hold such a hearing constitutes an abuse of discretion. (*Johnson* v. *Winter* (1982) 127 Cal.App.3d 435, 440 [179 Cal.Rptr. 585]; see also *In re Muszalski* (1975) 52 Cal.App.3d 475, 483 [125 Cal.Rptr. 286].) We are not persuaded that an *in camera* hearing was the *only* means by which County could meet its burden. The record shows the trial court was sufficiently apprised of the County's reasons for claiming the privilege; an *in camera* inspection of the investigation reports would have apprised the court of the reports' actual contents but would *not* have changed the County's reasons for claiming the privilege. The instant case does *not* involve a claim of privilege otherwise inarticulable without actual disclosure of the privileged information. Accordingly, County's arguments in this regard are without merit.

### C. *Minutes of the Claims Settlement Committee Meeting*

██ County next claims that the minutes containing the deliberations of the claims settlement committee meeting held on October 11, 1982, are exempt from disclosure under section 54957.2 of the Brown Act. (Fn. 6, *ante,* see §§ 54950-54961.) We disagree.

The Brown Act, enacted in 1953, insured actions taken and deliberations conducted by local legislative bodies be openly performed. Section 54950

declares: "The people of this State do not yield their sovereignty to the agencies which serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments they have created."

Section 54953 of the Brown Act provides: "[a]ll meetings of the legislative body of a local agency shall be open and public, and all persons shall be permitted to attend any meeting of the legislative body of a local agency, except as otherwise provided in this chapter." Legislative bodies within the meaning of the act include "permanent boards or commissions of a local agency." (§ 54952.5.) Thus, the county's claims settlement committee is a "legislative body" under the act. Closed sessions of local legislative bodies are allowed *only* in the following instances: meetings called for the purpose of deciding whether to grant or renew a license to an applicant with a criminal record (§ 54956.7), and meetings called for the purpose of discussing public security matters or regarding ". . . appointment, employment, evaluation of performance, or dismissal . . . or to hear . . . charges brought against . . ." a public employee. (§ 54957.) It also provides minutes taken of closed sessions under the act do not constitute a public record under the CPRA and are to be kept confidential. (§ 54957.5.)

The County's claims settlement committee discussed the Clemens' settlement in a session closed to the public. The Brown Act does not, however, authorize the holding of closed sessions by legislative bodies for the purpose of discussing settlement claims. Thus, the committee's secret meeting was in clear violation of the Brown Act. County's argument that the closed session minutes are exempt under section 54957.5 is also unfounded as that section does *not* apply to closed sessions held in violation of the act.

County further argues the minutes of the claim's settlement committee meeting should be protected from disclosure by attorney-client privileges because county counsel was present as both legal counsel and committee member. While the Brown Act has been interpreted to allow closed sessions for the purpose of confidential attorney-client consultation (*Sacramento Newspaper Guild* v. *Sacramento County Bd. of Suprs.* (1968) 263 Cal.App.2d 41, 58 [69 Cal.Rptr. 480]), the mere presence of county counsel at a meeting will *not* turn deliberations regarding the settlement of a tort claim into "confidential" attorney-client communications. As stated in the *Sacramento Newspaper Guild* case, "Neither the attorney's presence nor the happenstance of some kind of lawsuit may serve as the pretext for secret consultations whose revelation will not injure the public interest." (*Id.*, at

p. 58.) We conclude the minutes of the October 11, 1982, meeting are not exempt from disclosure under the attorney-client privilege.

County lastly contends the minutes of the committee's meeting should not be disclosed because "confidential" records were discussed during the meeting, citing a California Attorney General opinion indicating holding of a closed session is justifiable where independently privileged records are discussed. (62 Ops.Cal.Atty.Gen. 150, 159 (1979).) However, County has failed to establish *any* of the records contained in the Clemens' settlement file, which were presumably discussed at the secret meeting, is in fact independently privileged from disclosure. This last contention is therefore also devoid of merit.

### D. *Rough Notes*

County claims the rough undated notes made by risk management staff, contained in a document entitled "action and memo sheet" (doc. 16), are exempt from disclosure under subdivision (a) of section 6254. This subdivision protects "[p]reliminary drafts, notes, or interagency or intraagency memoranda which are not retained by the public agency in the ordinary course of business, provided that the public interest in withholding such records clearly outweighs the public interest in disclosure."

There is no indication in the record regarding the contents of these notes; moreover, there is no indication whether the notes are of the type "not retained by the public agency in the ordinary course of business." Thus, we cannot ascertain whether subdivision (a)'s exemption provisions are applicable to these notes. Even assuming the exemption is applicable, the record is silent regarding the competing considerations in balancing disclosure versus nondisclosure interests.

We therefore remand the determination of this issue to the trial court with directions to inspect the undated rough notes *in camera* to determine whether they constitute notes not retained by the County in the ordinary course of business under the meaning of subsection (a) and, if so, whether the public interest in disclosure is outweighed by the public interest in nondisclosure.

### E. *Remaining Settlement Records*

The remaining documents in Clemens' settlement file (those dealing with the annuity policy (docs. 7, 9 & 15), those pertaining to the warrants issued to Clemens (docs. 11 & 13), and those regarding the settlement

agreement itself (docs. 12 & 14)) County argues should be protected from disclosure under section 6255 (fn. 7, *ante*) since "the public interest served by not making the record public clearly outweighs the public interest served by disclosure of the record." (§ 6255.)

The County claims it is in the public interest to keep secret its settlement policy and decisions, for if known to the public it would result in frivolous tort claims filed against the County. It further argues public scrutiny of the County's settlement procedures would have an adverse impact upon the County's economic ability to sustain itself as a tort defendant, especially in those cases where it is more economically feasible to pay "nuisance value" in the settlement of a claim than to continue to litigate.

Against this interest must be measured the public interest in finding out how decisions to spend public funds are formulated and in insuring governmental processes remain open and subject to public scrutiny. We find these considerations clearly outweigh any public interest served by conducting settlement of tort claims in secret, especially in light of the policies of disclosure and openness in governmental affairs fostered by both the CPRA and Brown Act. While County's concern with the potential for escalating tort claims against it is genuine, opening up the County's settlement process to public scrutiny will, nevertheless, put prospective claimants on notice that only meritorious claims will ultimately be settled with public funds. This in turn will strengthen public confidence in the ability of governmental entities to efficiently administer the public purse.[13]

County argues the settlement agreement should remain confidential because it was entered into with the expectation its provisions would remain confidential. We disagree. "[A]ssurances of confidentiality are insufficient in themselves to justify withholding pertinent public information from the public." (*San Gabriel Tribune* v. *Superior Court, supra,* 143 Cal.App.3d 762, 776.) As we have already held, the documents relating to the settlement of Clemens' claim constitute "public records" within the meaning of section 6252, subdivision (d). We conclude that assurances of confidentiality by the County regarding the settlement agreement are inadequate to transform what was a public record into a private one. (Cf. *San Gabriel Tribune* v. *Superior Court, supra,* 143 Cal.App.3d at pp. 774, 775 where assurances of confidentiality similarly made by a public entity to a utility company regarding financial data utilized in granting the company a rate increase were held

---

[13]Plaintiff does not claim, nor do we hold, every discussion regarding settlement of an actual or potential case against the county should be made public. We limit the reach of our holding to the actual discussions and actions of the claims settlement committee.

insufficient to convert the data, deemed a public record, into a private record.)

 Lastly, we hold the court properly exercised its discretion *not* to conduct an *in camera* inspection of the remaining, nonexempt documents as it was able to adequately balance the competing interests for and against disclosure without such a hearing.

We hold the County must allow The Register access to all the settlement documents contained in the Clemens' settlement file with the exception of the crime report (doc. 6) and the rough undated notes made by Risk Management staff (doc. 16). The cause is remanded to the trial court for further proceedings regarding accessibility to these two documents not inconsistent with the views expressed in this opinion.

The court is also directed to award The Register court costs and reasonable attorneys fees incurred as the prevailing plaintiff in litigation pursued under the CPRA, in accordance with section 6259. The order is affirmed and the cause is remanded with directions.

Wallin, J., concurred.

**CROSBY, J.**—I respectfully dissent. I would reach none of the issues raised by the parties and addressed by the majority. The settlement document prepared by the county and signed by Clemens and his attorney contains, we are told, a nondisclosure clause similar to the following: "It is understood and agreed that the terms of this settlement shall remain confidential, and disclosure by the respective parties shall act to make this settlement void." When questioned about this provision at oral argument, counsel for The Register made the remarkable admission that the newspaper not only desires to publish the details of the settlement, it hopes its action will void the agreement.

In its First Amendment fervor to publish Clemens' medical and psychiatric records and zeal to destroy his recovery, The Register has forgotten another part of our Constitution, due process of law. Michael T. Clemens has never been named as a party to this proceeding. He has received no legal notice of the action nor any proper opportunity to be heard.

At the hearing below, Clemens' absence was raised by the court at the very outset: "I think that some notice should be given of the hearing to the individuals [*sic*] involved there." The deputy county counsel agreed: "I think the court does point out a very valid point that there are privacy

interests of the individual who is part of the settlement with the county. The court is well aware that's a constitutional right of privacy, and I think it would be well taken to have those individuals to be present to be heard in this regard. [¶] The attorney who is representing the individual who is part of the settlement [agreement] has expressed interest to do that. I thought he would be here this morning.''

Later the following colloquy occurred: ''[County Counsel]: I would also indicate, too, that the settlement agreement would be similar to those, but it's also confidential in the terms that it is confidential by contract, and there is an expectation of privacy there, but our major argument— [¶] The Court: Who wanted privacy, the county or the individual? [¶] [County Counsel]: It's generally asserted by the county, but there was an interest conveyed to me by the claimant's attorney that they also wanted it confidential, because not only as you put forward all his medical and psychiatric records to expedite and to make sure there is a settlement here, but this gentleman is also in a vulnerable position being the subject of institutionalization. And I believe his argument would be if he were here, what is conveyed to me was that he is locked up, there are other people who would like to get his money, possibly extort money from him, and he doesn't want them to know that he has this money, and the money that he got from this settlement is a result of damages that he sustained. Just because he was alleged to be a child molester, I don't think it makes him any different from anybody else who sustained damages at the hands of the county. That is why he doesn't want this settlement agreement to be public. He doesn't want anybody to know he has money because he might have a lot of problems when they know he has money. [¶] The Court: I can appreciate that. Certainly that's an interest to be considered.''

The Register's counsel responded, ''the reason that it's unnecessary is that what we are dealing with here is a public file, in the sense that it's in the risk management office of the County of Orange. When a person files a claim, that is the first step in a procedure for taking action against a public entity. When that claim is filed—as a matter of fact, counsel, I believe, has admitted or at least advised us the claim is a public document—that exposes the claimant to the issue involving all of those things that are involved in his action against the county in this case. Therefore, he has put into issue his damages, the means by which he was in this case attacked, I guess, and the issues involving the tort, and frankly the medical issues, because somebody has to assess all of that and make a decision about it. That's the only way that it can be resolved. [¶] Therefore, his reasons for personal privacy have been waived to the extent that these matters are being used in a civil action.'' The court apparently accepted this argument, for it did not refer

to Clemens' absence again and announced an intent to issue a ruling later the same day.

An individual does not waive the constitutional right of privacy by filing a claim or a lawsuit, except to the extent necessary to the particular action. (*Britt* v. *Superior Court* (1978) 20 Cal.3d 844, 859 [143 Cal.Rptr. 695, 574 P.2d 766]; *GT, Inc.* v. *Superior Court* (1984) 151 Cal.App.3d 748, 753 [198 Cal.Rptr. 892]; see art. I, § 1, Cal. Const.) Clemens should be afforded a proper opportunity to argue the parameters of his own waiver, if any, and the effect of the nondisclosure clause.[1]

It is an established principle that "[w]here the plaintiff seeks some type of affirmative relief which, if granted, would injure or affect the interest of a third person not joined, that third person is an indispensable party. [Citation.]" (*Sierra Club, Inc.* v. *California Coastal Com.* (1979) 95 Cal.App.3d 495, 501 [157 Cal.Rptr. 190].) Although the court retains jurisdiction to act despite the absence of an indispensable party, "for reasons of equity and convenience . . . the court should not proceed with a case where it determines that an 'indispensable' party is absent and cannot be joined. [Citation.]" (*Id.,* at p. 500.)

Also, it has long been the law that "[t]he objection being so fundamental, it need not be raised by the parties themselves; the court may, of its own motion, dismiss the proceedings, or refuse to proceed, until . . . indispensable parties are brought in. [Citations.]" (*Bank of California* v. *Superior Court* (1940) 16 Cal.2d 516, 522 [106 Cal.Rptr. 879].) In fact the objection may be made at any time by a trial or appellate court. (*Hartman Ranch Co.* v. *Associated Oil Co.* (1937) 10 Cal.2d 232, 265 [73 P.2d 1163].)

We should raise the objection. Clemens remains a prisoner with impaired access to the legal process. His lawyer has advised the county counsel Clemens desires to maintain the confidentiality of his medical and psychiatric records and fears for his safety if the settlement is disclosed. It is not for us to cast aside these fears lightly. Clemens is a convicted child molester who has already had his throat slashed once by another inmate. Part of the settlement was a nondisclosure provision which both sides bargained for.

---

[1]In a similar vein, see *Seattle Times Co.* v. *Rhinehart* (1984) — U.S. — [81 L.Ed.2d 17, 104 S.Ct. 2199] where the Supreme Court noted, "A litigant has no First Amendment right of access to information made available only for purposes of trying his suit. . . . [¶] Moreover, pretrial depositions and interrogatories are not public components of a civil trial. [Fn. omitted.] . . . Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information." (*Id.,* — U.S. at p. — [81 L.Ed.2d at pp. 26-27].)

Moreover, The Register is not just trying to sell newspapers, its counsel admits it wants to derail Clemens' recovery.[2] The record reveals no information as to why Clemens' counsel failed to appear at the hearing—perhaps he reasonably believed he lacked standing until Clemens was actually joined. Perhaps he was not retained for that purpose. Whatever the reason, it is clear Clemens has been denied the fundamental right to proper notice and an opportunity to be heard.

It is the strength of the Republic that the Constitution protects the pariah with the same blind devotion it does the popular and the powerful. The majority should not yield to The Register's hypocritical invocation of our fundamental law at the expense of this principle. I would dismiss or abate the proceedings pending Clemens' joinder as an indispensable party. (Code Civ. Proc., § 389.)

A petition for a rehearing was denied August 28, 1984, and appellant's petition for a hearing by the Supreme Court was denied October 19, 1984.

---

[2] Although the county counsel has forgotten his superior court argument concerning the need to join Clemens here, this record presents no current evidence of collusion between the county and The Register to defeat the agreement. Nevertheless, the result may be the same as if there were. The Register apparently believes once the claims settlement committee's bargain with Clemens is exposed in the newspaper, a public outcry against the settlement may stampede the county board of supervisors to seek to disavow it, perhaps by means of the nondisclosure provision which the county itself suggested.