[Civ. No. 2461. Fifth Dist. Nov. 6, 1975.]

JENNIE MADRID, Plaintiff and Respondent, v.
THE JUSTICE COURT FOR THE DINUBA JUDICIAL DISTRICT
OF TULARE COUNTY, Defendant and Respondent;
THE PEOPLE, Real Party in Interest and Appellant.

ZORAIDO RAYMONDO et al., Plaintiffs and Respondents, v.
THE JUSTICE COURT FOR THE DINUBA JUDICIAL DISTRICT
OF TULARE COUNTY, Defendant and Respondent;
THE PEOPLE, Real Party in Interest and Appellant.

**COUNSEL**

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Roger E. Venturi and Janice Hayes, Deputy Attorneys General for Real Party in Interest and Appellant.

Charles B. Flood III, Public Defender, and Walter L. Gorelick, Assistant Public Defender, for Plaintiffs and Respondents.

No appearance for Defendant and Respondent.

**OPINION**

**THOMPSON, J.**\*—The appeal herein is a consolidated appeal by the People from the granting of a writ of prohibition restraining the Dinuba Justice Court from proceeding with the prosecution of plaintiffs and respondents for violations of Welfare and Institutions Code section 11483.

---

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

The facts in each of the consolidated cases are identical and are not disputed. Each defendant was charged by an amended information with violating section 11483 of the Welfare and Institutions Code, said section providing:

"Whenever any person has, by means of false statement or representation or by impersonation or other fraudulent device, obtained aid for a child not in fact entitled thereto, the person obtaining such aid shall be punished as follows:

"(1) If the amount obtained or retained is two hundred dollars ($200) or less, by imprisonment in the county jail for a period of not more than six months, a fine of not more than five hundred dollars ($500), or both such imprisonment and fine.

"(2) If the amount obtained or retained is more than two hundred dollars ($200), by imprisonment in the state prison for not less than one year or more than 10 years or by imprisonment in the county jail for not more than one year.

"All actions necessary to secure restitution shall be brought against persons in violation of this section as provided in Sections 12250 and 12850."

Upon motion by the People and under the provisions of Penal Code section 17, each alleged violation was declared to be a misdemeanor. Each of the defendants entered pleas of not guilty and thereafter sought alternative writs of prohibition. They alleged that the bringing of the criminal actions was barred by the provisions of the Welfare and Institutions Code, inasmuch as prior to the filing of criminal complaints, demand for restitution had been made and defendant and respondents herein had agreed to make restitution and were making restitution by having sums withheld from current payments.

After hearing the matter, the trial court granted a peremptory writ of prohibition directing the Dinuba Justice Court to desist from any further action in the cases. The People appeal.

In each of the complaints it is charged that the respondents herein violated section 11483 of the Welfare and Institutions Code by wilfully, unlawfully, feloniously and fraudulently obtaining AFDC aid in excess of $200 without any legal entitlement to such aid. The appellant, real

party in interest, filed a return to the petition for an alternative writ of mandate, in which is set forth a notification to each respondent that the violation of Welfare and Institutions Code section 11483 consisted of failing to give a true report of income.

The trial court, in issuing a peremptory writ barring further prosecution of respondents, based its opinion solely upon the ground that no criminal prosecution under Welfare and Institutions Code section 11483 was authorized until and unless the restitution had either been sought or obtained by civil action. Chief reliance is placed upon the concluding paragraphs of sections 12250 and 12850 of the Welfare and Institutions Code (repealed by Stats. 1973, ch. 1216, §§ 36-37, p. 2903, and Stats. 1974, ch. 75, § 12, respectively) which read as follows: "It is the intent of the Legislature that restitution shall be sought by request, a civil action, or other suitable means prior to the bringing of a criminal action."

At the hearing upon the petition for a writ of mandate it was stipulated that both petitioners herein had commenced making restitution by the process of deducting from current AFDC payments certain sums to be applied against the overpayments previously received. When AFDC payments were terminated altogether petitioners stated they intended to continue making restitution.

■ As we noted earlier the issue presented to the trial court, and here presented, is whether criminal proceedings may be instituted against a welfare recipient who has made restitution or who promises to make restitution.

In resolving this issue we first look to the applicable statutes. Welfare and Institutions Code section 11483 is a criminal statute providing punishment for all persons who obtain aid for a child by any fraudulent statements, representations, impersonation or any other fraudulent device. If the amount so obtained is more than $200 it becomes a felony. The last paragraph of the section provides: "All actions necessary to secure restitution shall be brought against persons in violation of this section as provided in sections 12250 and 12850." In revising the Welfare and Institutions Code, the last two named sections were repealed in 1973, but this fact is of no significance inasmuch as that in their repeal no intent was expressed to make them inoperative as they effect section 11483 by incorporation by reference. (*Palermo* v. *Stockton Theatres, Inc.* (1948) 32 Cal.2d 53, 58-59 [195 P.2d 1].) Moreover, substantially identical language is contained in a newly adopted section of the Welfare and Institutions Code (§ 13200).

■ The litigants in this case concede that we are required to follow recognized rules of construction of statutes as set forth in *Rich* v. *State Board of Optometry* (1965) 235 Cal.App.2d 591, 604 [45 Cal.Rptr. 512] "[C]ourts are bound to give effect to statutes according to the usual, ordinary import of the language employed in framing them. [Citations omitted.] While a court may also properly rely on extrinsic aids in ascertaining the intention articulated in a statute, the court should first turn to the words of the statute to determine the will of the Legislature. [Citation omitted.] A court should not, moreover, add to or alter the words of the statute to accomplish a purpose that does not appear on the face of the statute or from its legislative history if the words of the statute are clear; nor should the court seek hidden meanings not suggested by the statute or by the available extrinsic aids. [Citations omitted.]"

■ In construing the statute here in question the trial court in its memorandum opinion stated in part: ". . . the only way to give substance to the inhibition of the Welfare and Institutions Code regarding criminal prosecutions is to hold that if civil restitution is successfully sought, criminal prosecution is barred; and that criminal prosecutions are intended to be reserved for the situations where civil restitution cannot be successfully obtained."

Inherent in the above statement is the expressed belief that civil restitution must be sought and if successfully sought, or is in progress of being made, criminal prosecution is barred. In the instant cases neither petitioner has made full restitution but has promised to and is currently making restitutional payments. Implicit in the court's holding is that a promise to make restitution is tantamount to complying with the requirement to make restitution.

We do not believe that the statute before us is susceptible to such an interpretation. We note that the statute does not by its terms bar prosecution even if restitution is made. This being so, it would most certainly follow that prosecution is not barred if only partial restitution is made.

■ It is our judicial function to ascertain and declare the true intent and meaning of the statute before us in the first instance by a consideration of its terms, not by a tortured construction or by implying hidden meanings. (*Wisdom* v. *Eagle Star Ins. Co.* (1963) 211 Cal.App.2d 602 [27 Cal.Rptr. 599].)

 Welfare and Institutions Code sections 11250 and 12850 state that restitution shall be sought before criminal actions are instituted and no more. It is obviously intended to direct public agencies to seek restitution as a first recourse but by its terms it does not bar criminal action thereafter. Nor are any time limits suggested in which to pursue restitution rather than criminal prosecution.

It is a well established principle that restitution is not a bar to criminal prosecution. (*People* v. *Holmes* (1970) 5 Cal.App.3d 21, 25 [84 Cal.Rptr. 889].) In fact, we seriously doubt the Legislature could constitutionally establish a class of crimes in which restitution of public moneys taken with criminal intent would bar criminal prosecution. It is a far cry from other penal statutes which make the taking of public funds a non-probational offense. Penal Code section 1379 expressly provides that no public offense can be compromised except under circumstances not here applicable.

While the legislative history of an act is often an uncertain guide, such is not the case in this instance. When the Legislature in 1957 enacted Welfare and Institutions Code sections 12250 and 12850, which sections are incorporated by reference in Welfare and Institutions Code section 11483 under which sections the actions herein are brought, the following amendment was offered: "It is the intent of the Legislature that a civil action shall be first brought and criminal action resorted to *only after civil action proves unsuccessful.*" This amendment was rejected, a clear indication from the Legislature that it did not wish to impose such a halter on the prosecution of welfare frauds. As was stated in *Rich* v. *State Board of Optometry, supra,* 235 Cal.App.2d 591 at page 607: "The rejection by the Legislature of a specific provision contained in an act as originally introduced is most persuasive to the conclusion that the act should not be construed to include the omitted provision." (Citing cases.) Here a clear legislative intent was indicated and has not been altered with the passage of time.

Persuasive also is the fact that when the author of Statutes of 1970, chapter 693, section 1, Assemblyman Ken MacDonald, asked Legislative Counsel's opinion as to whether the very language with which we are here concerned precluded the criminal prosecution of someone who was making restitution, he was advised in a written opinion that criminal prosecution was not precluded. (Legislative Counsel letter headnoted Public Assistance No. 11077.) The opinion is important not only for the logic of its exposition, but also because in the face of it Assemblyman

MacDonald did not propose any amendment to accomplish his apparent wishes. We do not believe as respondents urge that the Legislature's failure to make mandatory civil restitution was a mere oversight.

Respondents raise a number of issues which have no apparent application to their own predicament. They make no claim of error in calculating their AFDC overpayments, but urge that to require an AFDC recipient to begin making restitution before he has exhausted his rights to administrative hearings is unconscionable. Overlooked is the fact that troubles do not begin with a recipient's failure to understand the intricacies of welfare‐ aid regulations. He is not charged with not understanding them. His troubles begin when he makes intentionally false and fraudulent factual statements to his welfare worker concerning his income, or the number of his dependents, or the amount of his rent, etc.—all matters well within his knowledge. The welfare recipient is interviewed by a case worker who is required to advise the recipient of his rights and obligations and answer his questions and who takes down his answers.

We are not impressed with respondents' argument that by seeking restitution rather than criminal penalties the public coffers will be more readily filled. We think a condition of probation requiring reimbursement for someone convicted of welfare fraud will provide an equally if not more satisfactory method of returning ill-gotten payments to the public coffers.

As a matter of fact a civil judgment in a welfare case is invariably valueless since it is almost certainly uncollectable. A recipient's welfare check is exempt from execution as is virtually everything else he is likely to own. It would appear that it would be an unusual case in which a public agency would seek a judgment in a civil court to collect fraudulently paid welfare money.

Yet the respondents argue that by "sincerely offering" to make restitution they insulate themselves from penal action. As politicians and lovers can attest, "sincere" promises have little financial or moral negotiability.

We cite the facts of the instant case to illustrate our point. Here each of the respondent AFDC recipients was charged with wilfully, fraudulently, etc., obtaining AFDC payments from the County of Tulare from October 1, 1972 until February 8, 1973. The complaint was not filed until

November 7, 1973, some nine months after the last allegedly unlawfully received payment. The recipients had nine months in which to make arrangements for restitution. Certainly the district attorney did not act hastily in seeking criminal penalties. But apparently nothing happened until he did. If a district attorney is required to wait until he has exhausted his civil remedies the statute of limitations will run on the criminal action, as it would have in this case. We do not believe the Legislature intended such a result.

Respondent alludes to the fact that a recipient cannot make a restitution payment without admitting criminal liability and that a lawyer would so advise him. Such a lawyer would also advise him that he could make the payment under protest and thereby avoid any admission of liability. Such an argument does not activate our lacrimal glands.

Under respondents' theory of the law a welfare recipient can avoid all criminal prosecution if he makes restitution. Another welfare recipient, not so affluent and not able to pay back his overpayments and not being sufficiently dishonest to promise to pay what he knows he cannot pay, may be prosecuted. We can scarcely imagine a less justifiable discrimination. The California State Supreme Court has been unwilling to sanction prison for the poor and only fines for the more affluent. (*In re Antazo,* 3 Cal.3d 100 [89 Cal.Rptr. 255, 473 P.2d 999].)

The judgment is reversed.

Brown (G. A.), P. J., and Gargano, J., concurred.

On December 5, 1975, the opinion was modified to read as printed. The petition of the plaintiffs and respondents for a hearing by the Supreme Court was denied December 30, 1975.