*Supp. 36 Opinion
REESE, J.
I. Statement of the Case
Defendant, an administrative official in the Los Angeles Unified School District, was prosecuted for failing to report child abuse, a misdemeanor under Penal Code section 11172, subdivision (e), punishable by six months confinement in the county jail, a fine of $1,000, or both. After the initial trial ended in a hung jury, a second jury trial resulted in defendant’s being convicted of one count charging failure to report an instance of child abuse “discovered between November 30, 1984 through December 17, 1984, concerning Wendy H., a juvenile.” The trial court sentenced defendant to probation and 400 hours of community service. Defendant timely appeals.
II. Summary of Pertinent Trial Proceedings and Evidence
During the period between November 30 and December 17, 1984, the record below reflects several telephone conversations took place between defendant and Alice McDonald, the principal of 68th Street School, one of the schools over which defendant had administrative authority. The principal advised defendant of reports concerning purported acts of sexual abuse in the classroom performed by a third-grade teacher at the school. Discussions pertaining to procedural steps required to ascertain the substantiality of the complaints were had during this period. On December 17, 1984, after the principal advised defendant that the teacher admitted to a teacher’s aide that he was a pedophile, defendant phoned the office of the chief of the Los Angeles Unified School District Police Department (hereinafter designated as LAUSDPD) and reported suspected child abuse by the teacher.
At LAUSDPD Chief Richard Green’s direction, LAUSDPD Investigator Rocky Sherman went to the 68th Street School and commenced an investigation on December 18, 1984. Two days later, Sherman contacted Detective Purrington of the Los Angeles Police Department (hereinafter designated as LAPD), 77th Street Division. On December 26, 1984, Detective Doug Varner and his partner, Detective Dale Barraclough, of the Sexually Exploited Child Abuse Unit in the Juvenile Division of the LAPD were assigned the case. Sherman turned over to Varner the results of his preliminary investigation, including written reports, statements of victims *Supp. 37 and witnesses, and his findings. He actively assisted and collaborated with Varner in his investigation.
The record further reflects by the undisputed testimony of one of the People’s witnesses, Herbert Guy Graham, administrative director of the LAUSDPD, that school district investigators customarily filled out the forms required to be submitted to the Department of Justice by the mandated reporting law and directed the forms to the LAPD, and, occasionally, submitted them directly to the Department of Justice. He stated the LAUSDPD does not have the equipment to tap directly into the child abuse index registry at the Department of Justice, but must go through a local law enforcement agency that has the equipment.
Phillip Jordan, one of the People’s witnesses, a former superintendent of Region C of the Los Angeles Unified School District and line supervisor of defendant, testified without contradiction as follows: “Our school police were considered tantamount to reporting to the police.”
Norman Mathers, immediate predecessor to defendant as deputy administrator of Region C, testified he instructed Principal Alice McDonald “to follow through like a principal should ... to call the Unified School District Police.”
Among the jury instructions given by the trial judge were the following: “A child protective agency means a police or sheriff’s department, a county probation department, or a county welfare department.”
“The Los Angeles Unified School District Police are not a child protective agency.”
III. Issues on Appeal
Defendant contends the trial court erred in instructing the jury that a failure to report upon reasonable suspicion as defined in Penal Code section 11166, subdivision (a), was sufficient to support a conviction; that the trial court erred in instructing the jury that the LAUSDPD was not a child protective agency; the trial court erred in refusing to instruct on the issue of “mistake of fact” defense; and the People failed to meet its burden.
IV. Discussion and Disposition
Under the facts of this case, we find the trial court committed reversible error in instructing the jury that the LAUSDPD is not a child protective agency, and reverse.
*Supp. 38 We hold as a matter of law that under the particular facts of this case, the LAUSDPD is a child protective agency under the Child Abuse Reporting Law, a comprehensive statute codified in Penal Code section 11165 et seq. The term, “child protective agency” is defined under the act as “a police or sheriff’s department, a county probation department, or a county welfare department.” (Pen. Code, § 11165, subd. (k), italics added.) LAUSDPD is a school district police department created in January 1983 by the Los Angeles Unified School District pursuant to authority contained in section 39670 of the Education Code. That section reads: “The governing board of any school district may establish a security department under the supervision of a chief of security or a police department under the supervision of a chief of police as designated by, and under the direction of, the superintendent of the school district, and employ, in accordance with the provisions of Chapter 5 (commencing with Section 45100) of Part 25 of Division 3 personnel as may be necessary to ensure the safety of school district personnel and pupils, and the security of the real and personal property of the school district. It is the intention of the Legislature in enacting this section that a school district police or security department shall be supplementary to city and county law enforcement agencies and shall under no circumstances be vested with general police powers. ” (Italics added.) LAUSDPD, according to the record below, is the fourth largest police department in the County of Los Angeles, having under its arena of responsibility the safety and welfare of approximately 600,000 students. Its peace officers attend the 18-week Los Angeles Sheriff’s Academy course and are fully trained peace officers. The evidence produced during the trial proceedings further established the following facts:
LAUSDPD officers have full police power in connection with school district property and its employees. LAUSDPD officers are peace officers while engaged in the performance of their duties, and even if not in the performance of their duties if a danger to person or property, or of flight of the perpetrator, exists. (Pen. Code, § 830.4.)[1] The officers conduct interviews, file reports, and make arrests like any other peace officers. And the LAUSDPD has investigators assigned primarily to investigate sex crimes in connection with the schools.
As of the trial date, the LAUSDPD sometimes prepared the reporting forms for child abuse which the law requires be forwarded to the Department of Justice. They either forwarded the reports to the LAPD or directly to the Department of Justice. The LAUSDPD did not have the computer facilities necessary to tap into the child abuse index at the Department of Justice. To do so, it had to go through a local law enforcement agency that had the necessary equipment.
*Supp. 39 The trial court, in making the decision that the LAUSDPD is not a child protective agency, relied heavily on its finding that the department did not have the investigative ability to investigate child abuse allegations and lacked necessary computer facilities. We find such basis for the elimination of LAUSDPD as a qualified child protective agency to be without merit. “It is our judicial function to ascertain and declare the true intent and meaning of the statute before us in the first instance by a consideration of its terms, not by a tortured construction or by implying hidden meanings. [Citation.]” (Madrid v. Justice Court (1975) 52 Cal.App.3d 819, 824 [125 Cal.Rptr. 348], italics added.) The primary source of legislative intent and meaning is in the words used in the statute. (People v. Knowles (1950) 35 Cal.2d 175, 183 [217 P.2d 1].) Courts are bound to give effect to statutes according to the ordinary impact and meaning of their words. (Madrid v. Justice Court, supra, 52 Cal.App.3d at p. 825.) Section 11165, subdivision (k) does not qualify, limit, condition or restrict the term “police department”; it does not define a police department as being one which must have a sexually exploited abuse unit and computer ability capable of entering the computerized data bank known as the “Child Abuse Central Registry.” Such specious reasoning would eliminate at least half of the smaller police departments from acting as child protective agencies capable of accepting reports of child abuse violations and investigating them, as they, too, would be handicapped by having no specialized investigative units on computer facilities capable of entering the central registry.
In reviewing the Child Abuse Reporting Law in its entire context, we hold the foregoing interpretation of section 11165, subdivision (k), is not disharmonious with any other provisions of the reporting law. “Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as whole. [Citations.]” (Moyer v. Workmen’s Comp. Appeals Bd. (1973) 10 Cal.3d 222, 230-231 [110 Cal.Rptr. 144, 514 P.2d 1224].) We conclude the Legislature contemplated a reporting system in which those persons who were obligated to file a report of suspected child abuse would have a child protective agency within easy reach and availability; immediacy of the report being made for the protection of the minor victim is of paramount importance. Deficiencies existing in an agency, such as fear of retribution for reporting and lack of an expert investigative staff or computer facilities, were foreseen by the Legislature. Differences caused by human frailty, lack of funds or manpower, and/or bureaucratic stagnation were envisioned. As insurance against the same, provisions in the act calling for cooperative arrangements between local agencies, immunity from liability for reporting, and a system of cross-reporting were included. (§§ 11166, subd. (g), 11166.3, and 11172.)
*Supp. 40 “The mandatory child abuse report must be made to a ‘child protective agency,’ i.e., a police or sheriff’s department or a county probation or welfare department. The professional must make the report ‘immediately or as soon as practically possible by telephone.’ The professional then has 36 hours in which to prepare and transmit to the agency a written report, using a form supplied by the Department of Justice. The telephone and the written reports must include the name of the minor, his or her present location, and the information that led the reporter to suspect child abuse. (§§ 11166, subd (a), 11167, subd. (a), 11168.) Failure to make a required report is a misdemeanor, carrying a maximum punishment of six months in jail and a $1,000 fine. (§ 11172, subd. (e).)
“The child protective agency receiving the initial report must share the report with all its counterpart child protective agencies by means of a system of cross-reporting. An initial report to a probation or welfare department is shared with the local police or sheriff’s department, and vice versa. Reports are cross-reported in almost all cases to the office of the district attorney. (§ 11166, subd. (g).) Initial reports are confidential, but may be disclosed to anyone involved with the current investigation and prosecution of the child abuse claim, including the district attorney who has requested notification of any information relevant to the reported instance of abuse. (§ 11167.5.)
“A child protective agency receiving the initial child abuse report then conducts an investigation. The Legislature intends an investigation be conducted on every report received. The investigation should include a determination of the ‘person or persons apparently responsible for the abuse.’ (Stats. 1980, ch. 1071, § 5, pp. 3425-3426.) Once the child protective agency conducts an ‘active investigation ’ of a report and determines that it is ‘not unfounded, ’ the agency must forward a written report to the Department of Justice, on forms provided by the department. (§§ 11168, 11169.) An ‘unfounded’ report is one ‘which is determined by a child protective agency investigator to be false, to be inherently improbable, to involve an accidental injury, or not to constitute child abuse as defined in Section 11165.’ (§ 11165.6, subd. (c)(2).)
“The Department of Justice retains the reports in a statewide index, a computerized data bank known as the ‘Child Abuse Central Registry,’ which is to be continually updated and ‘shall not contain any reports that are determined to be unfounded.’ (§ 11170, subd. (a).) If a child protective agency subsequently determines that a report is ‘unfounded,’ it must so inform the Department of Justice who shall remove the report from its files. (§ 11169.)” (Planned Parenthood Affiliates v. Van de Kamp (1986) 181 Cal.App.3d 245, 259-260 [226 Cal.Rptr. 361], italics added.)
*Supp. 41 We conclude after reviewing the entire record on appeal that the defendant, the LAUSDPD, and the LAPD each participated as required by the reporting law. Each party implemented the exact kind of cooperative arrangements designed to coordinate existing duties in connection with the investigation of suspected child abuse cases. (§ 11166.3.) This conclusion is supported by the record which shows that the defendant reported to the LAUSDPD the suspected child abuse which had been reported to him by McDonald. In turn, the LAUSDPD immediately conducted a preliminary investigation and promptly reported orally and in writing to the LAPD. Finally, the LAPD responded by commencing its investigation. We find no violation by defendant of section 11172, subdivision (e). We determine in this unique instance the evidence is insufficient to sustain defendant’s conviction. (People v. Johnson (1980) 26 Cal.3d 557, 576-577 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].)
Our disposition, as indicated above, renders unnecessary discussion of defendant’s remaining contentions.
The judgment of conviction is reversed.
Cooperman, P. J., concurred.

 All further references are to the Penal Code.