TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

------------------------------------------------
                              :
        OPINION               :      No.  87-304
                              :
           of                 :      July 13, 1988
                              :
   JOHN K. VAN DE KAMP        :
     Attorney General         :
                              :
   RONALD M. WEISKOPF         :
  Deputy Attorney General     :
                              :
-------------------------------------------------------------------


        THE HONORABLE MAXINE WATERS, MEMBER OF THE CALIFORNIA
ASSEMBLY, has requested an opinion of this office on the following
questions:

        1.    What records pertain to "pending litigation" within
the meaning of subdivision (b) of section 6254 of the Public
Records Act?

        2.    Do records of a public agency which pertain to
litigation against the agency become exempt from public disclosure
under subdivision (b) of section 6254 when a claim against the
agency is filed if the records were not exempt from disclosure
before that time by other provisions of the Public Records Act?

        3.    Do police records which must be disclosed under
subdivision (f) of section 6254 become exempt from disclosure under
subdivision (b) when they pertain to pending litigation to which
the public entity is a party?

        4.    Is a claim filed against a public agency under
California's Tort Claims Act itself exempt from disclosure under
subdivision (b) of section 6254?

                        CONCLUSIONS

        1.    The    phrase    "records    pertaining    to    pending
litigation" contained in subdivision (b) of section 6254 of the
Public Records Act refers to records of a public agency which have
specifically been prepared for litigation to which the agency is a
party.

2.    Records generated in the ordinary course of a public agency's business which may be relevant in future litigation to which the agency might be a party are not exempt from disclosure under subdivision (b) of section 6254 before a claim is filed with the agency or litigation against it commences.  Nor do such records become exempt from disclosure under the subdivision once a claim is filed or litigation against the agency actually commences.

3.    Police records which had to be disclosed under subdivision (f) of section 6254 of the Public Records Act are not exempt from disclosure under subdivision (b) if they become relevant in pending litigation to which the public agency is a party.

4.    A claim filed against a public agency under California's Tort Claims Act is not exempt from disclosure under subdivision (b) of section 6254 of the Public Records Act.

ANALYSIS

The California Public Records Act ("the PRA"; Stats. 1968, ch. 1473, § 39, p. 2945; Gov. Code, §§ 6250-6265) deals with the ability of members of the public to have access to public records maintained by various state and local agencies throughout the state.  The term "public records" is defined in subdivision (d) of section 6252 of the Act to include "any writing containing information relating to the conduct of the public's business prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics."  On a prior occasion we observed that the definition is "nearly all-encompassing" and that its legislative history indicates that it was "intended to cover every conceivable kind of record that is involved in the governmental process and . . . pertain to any new form of record-keeping instrument as it is developed."  (58 Ops.Cal.Atty.Gen. 629, 633-634 (1975), quoting A Final Report of the California State Assembly Statewide Information Policy Committee on the California Public Records Act of 1968 (Mar. 1970), 1 Appendix to Journal of the Assembly (Reg. Sess. 1970) at p. 7; cf. Braun v. City of Taft (1984) 154 Cal.App.3d 332, 340;  San Gabriel Tribune v. Superior Court (1983) 143 Cal.App.3d 762, 774; Vallejos v. California Highway Patrol (1979) 89 Cal.App.3d 781, 785; Cook v. Craig (1976) 55 Cal.App.3d 773, 781-782.)

The general policy of the PRA, like the federal Freedom of Information Act upon which it was modeled (5 U.S.C., § 552, et seq.), favors disclosure of public records.  (§ 6250; cf. Register Div. of Freedom Newspapers, Inc. v. County of Orange (1984) 158 Cal.App.3d 893, 901; Cook v. Craig, supra, 55 Cal.App.3d at 781; Braun v. City of Taft, supra, 154 Cal.App.3d at 342; San Gabriel Tribune v. Superior Court, supra, 143 Cal.App.3d at 772; 53 Ops.Cal.Atty.Gen. 136, 143 (1970).)  Indeed, in enacting it, the Legislature found and declared that "access to information

concerning the conduct of the people's business is a fundamental and necessary right of every person in this state." (§ 6250.) But, as was noted in <u>Black Panther Party</u> v. <u>Kehoe</u> (1974) 42 Cal.App.2d 645, 655:

"If citizenship in a functioning democracy requires general access to government files, limited but genuine interests also demand restricted areas of nonaccess. Decisional law on the subject accepts the assumption that a statute calling for general disclosure may validly define reasonably restricted areas of nondisclosure, provided that the latter are justified by genuine public policy concerns."

The PRA thus strikes a balance between "the public's right to know" and the need to maintain areas of nondisclosure for certain types of government records. (Cf. 64 Ops.Cal.Atty.Gen. 575, 579 (1981).) It basically provides that except as otherwise provided, public records are to be open to inspection at all times during the office hours of public agencies (§ 6253, subd. (a)) and that any person may receive a copy of any identifiable public record upon request (§ 6256) and payment of a prescribed fee (§ 6256). (See 69 Ops.Cal.Atty.Gen. 129, 131 (1986); 64 Ops.Cal.Atty.Gen. 575, 579-580, <u>supra</u>.) This general right of public inspection, though, is followed in section 6254 with 20 categories of disclosure-exempt material which permit an agency not to disclose particular records that fall within them. (§ 6254 [1]; <u>Black Panther Party</u> v. <u>Kehoe</u>, <u>supra</u>, 42 Cal.App.2d at 656.) In addition, a "residual category" of confidential records is described in section 6255 which permits an agency to withhold a record from disclosure under the Act, where "on the facts of [a] particular case the public interest served by not making the record public clearly outweighs the public interest served by disclosure of the record." (§ 6255; cf. <u>Black Panther Party</u> v. <u>Kehoe</u>, <u>supra</u> at 650, 657; 64 Ops.Cal.Atty.Gen., <u>supra</u> at 584-585; 53 Ops.Cal.Atty.Gen. 136, 148 <u>supra</u>.) It is also important to bear in mind that a particular record may receive protection from disclosure from a source outside the PRA.[2]

---

[1]Section 6254 commences with the words: "Except as provided in Section 6254.7, nothing in this chapter [i.e., the Public Records Act] shall be construed to require disclosure of records that are any of the following: . . . ." Exemptions contained in subdivisions (a) through (t) then follow. Section 6254.7 deals with whether some very particular types of records are "public records."

[2]The key exemption from PRA disclosure, that offered by subdivision (k) of section 6254, was designed to recognize this. It offers protection for "[r]ecords the disclosure of which is exempted or prohibited pursuant to provisions of federal or state law, including, but not limited to, provisions of the Evidence Code

All of our questions pertain solely to the exemption provided in subdivision (b) of section 6254. It provides an express exemption from PRA disclosure for:

> "Records pertaining to pending litigation to which the public agency is a party, or to claims made pursuant to Division 3.6 (commencing with Section 810) of Title 1 of the Government Code [i.e., California's Tort Claims Act], until such litigation or claim has been finally adjudicated or otherwise settled."

We are asked: (1) what records are embraced by the subdivision; (2) whether records that were generated in the ordinary course of an agency's business and were not exempt from PRA disclosure, become exempt from disclosure by virtue of the subdivision when a claim is filed against the agency and the records will pertain to the litigation; (3) whether subdivision (b) provides an exemption for police records which must be disclosed under subdivision (f) of section 6254[3]; and (4) whether it covers the claim document itself. Our answers are confined to the operation of subdivision (b) and do not address whether another exemption may exempt a particular document from public disclosure.

_____

relating to privilege." (§ 6254, subd. (k).) The legislative history of the PRA indicates that "[t]he effect of that language [was] to continue in force the various statutes scattered throughout the codes that pertain to records of a particular type kept by a public officer or agency." (Final Report, op. cit. supra, at 13-14; cf., id. at 11.)

[3]Subdivision (f) of section 6254 generally exempts from PRA disclosure, "records of complaints to, or investigations conducted by, or records of intelligence information or security procedures of . . . any state or local police agency," but it also provides that state and local law enforcement agencies shall disclose certain information relating to "incidents" (such as the names and addresses of persons involved and witnesses to them; a description of any property involved; the date, time, and location; all diagrams; statements of parties and witnesses) unless the disclosure would endanger the successful completion of the investigation or a related investigation. The subdivision also requires state and local law enforcement agencies to make certain other information public, i.e., certain information relating to persons arrested by the agency and certain information relating to complaints or requests for assistance received by the agency, unless disclosure would endanger the safety of a person involved in an investigation or would endanger the successful completion of the investigation or a related one.

## 1.   What Records Pertain To Pending Litigation?

We are first asked to decipher the phrase "records pertaining to pending litigation."  Specifically we are asked what records are embraced by it.  In resolving the question we first turn to the words of the subdivision themselves and look to their plain, ordinary and usual meaning.  (Cf. People v. Craft (1986) 41 Cal.3d 554, 560;  People v. Castro (1985) 38 Cal.3d 301, 310; People v. Belleci (1979) 24 Cal.3d 879, 884; Madrid v. Justice Court (1975) 52 Cal.App.3d 819, 824; Rich v. State Board of Optometry (1965) 235 Cal.App.2d 591, 607.)   Reference to dictionaries is helpful toward that end.  (People v. Spencer (1975) 52 Cal.App.3d 563, 565; People v. Medina (1972) 27 Cal.App.3d 473, 479; People v. Johnson (1957) 147 Cal.App.2d 417, 419.)

Subdivision (b) offers protection to "records pertaining to pending litigation to which the public agency is a party."  The term "pending litigation" is one of art which refers to a suit which has already commenced but is not yet decided.  (Ballentine's Law Dict. (3d ed. 1969) at 929-930; Black's Law Dict. (4th ed. 1951) at 1291.)  But the term "litigation" is a broad one and embraces more than just court actions.  For example, in the cognate situations of the Bagley-Keene Open Meeting Act (Gov. Code, § 11120 et seq.) and the Ralph M. Brown Act (Gov. Code, § 54950 et seq.) the term has been defined as "any adjudicatory proceeding, including eminent domain, before a court, administrative body exercising its adjudicatory authority, hearing officer, or arbitrator."  (§ 11126, subd. (q); § 54956.9.)  We believe it has a similarly broad meaning in the Public Records Act.  There section 6254, subdivision (b) would protect any records that "pertain" to such actions to which an agency is a party.

The word "pertain" means to relate, to belong, to be pertinent to something else.  (Webster's Third New Intn'l. Dict. (1971 ed.) at p. 1688.)  Needless to say, that something else has to exist.  That "something else" here is "pending litigation"-- i.e., "litigation" of whatever sort that actually exists because of a filing of a first paper to initiate it.  Once litigation commences, papers will be generated as a result to deal with it. When it spoke of "records pertaining to pending litigation" in subdivision (b) we believe the Legislature had such documents in mind.[4]

---

[4]The subdivision of course also specifically mentions records pertaining to "claims made pursuant to [California's Tort Claims Act]" as coming within its exemption "until such . . . claim has been finally adjudicated or otherwise settled."  Generally speaking, before bringing suit against a public entity, one must first present a claim to it under the Tort Claims Act. (Gov. Code, § 810 et seq.; see §§ 810, 811.2, 945.4, 950.6; City of San Jose v. Superior Court (1974) 12 Cal.3d 447, 454; Loehr v. Ventura County

It has been suggested, however, that the proper standard to be used under subdivision (b) is to offer protection to any records of an agency which might be "relevant to" or "relate to" pending litigation to which it is a party, no matter when or why they may have been created. In other words, should a record come to relate to litigation, it would then be afforded protection under subdivision (b). We reject the suggestion.

In the course of performing their normal statutory functions, public agencies prepare a wide range of documents which are subject to disclosure as public records under normal agency practices. Indeed, only by having such documents publicly available are the people able to be aware of the conduct of governmental agencies and their expenditure of public funds. (Cf. Register Div. of Freedom Newspapers, Inc. v. County of Orange, supra, 158 Cal.App.3d at 909; San Gabriel Tribune v. Superior Court, supra, 143 Cal.App.3d at 780.) These documents are prepared with the knowledge that they will be subject to public scrutiny, and the persons who prepare them, do so with that understanding. One of the problems with the suggestion that is offered is that it ignores that once documents are thus created for the public domain and have been made public, their nature does not change. The proverbial cat, as it were, is already out of the bag. (Cf. Black Panther Party v. Keogh, supra, 42 Cal.App.2d at 656.) Indeed, in this vein we would observe that section 6254.5 of the PRA goes even further, for it provides that whenever an agency discloses a public record which is otherwise exempt from the PRA to any member of the public, "the disclosure shall constitute a waiver of the exemptions specified in Section[] 6254 . . . ." We deal here with records that were not previously exempt from disclosure.

Another problem with the suggestion is the consequences that would ensue if it were adopted. Rather than looking to a document's nature at the time it was created, the suggestion would somehow mutate the already public nature of the document on the happening of a subsequent event, the commencement of litigation, and would exempt it from disclosure under the PRA. Massive numbers of documents already in the public domain would no longer be available until litigation to which they relate, is terminated. For example, many property damage cases often involve project engineering reports and studies which have already received significant distribution prior to the litigation. But suddenly, a suit over a levee failure in the Delta, for example, would make

---

Community College Dist. (1983) 147 Cal.App.3d 1071, 1080; Eaton v. Ventura Port Dist. (1975) 45 Cal.App.3d 862, 866.) Since the protection offered by subdivision (b) specifically extends to records which "pertain to" such claims, the effect of that specific inclusion is to extend the chronological boundary of the subdivision's protection back to the time after which such claims are filed.

confidential all of the data on the Sacramento and San Joaquin River Flood Control Projects and other Delta Water Management Reports. And if the contention should be that heavy rains caused the failure, the literal impact of the suggestion would make weather reports and back up statistical data confidential and not available to anyone until the litigation is resolved. We do not believe the Legislature intended that effect of subdivision (b). Statutes, after all, are construed considering the consequences that might flow from particular constructions (cf. People v. Hannon (1971) 5 Cal.3d 330, 335; Estate of Ryan (1943) 21 Cal.2d 498, 513; People ex rel. Riles v. Windsor University, Inc. (1977) 71 Cal.App.3d 326, 332) and interpretive constructions which defy common sense or lead to absurdity are to be avoided (Younger v. Superior Court (Mack) (1978) 21 Cal.3d 102, 113-114; Fields v. Eu (1976) 18 Cal.3d 322, 328).

For these reasons--and, as will be discussed next in connection with our answer to the second question, because these records antedate the initiation of particular litigation--we reject the suggested interpretation of subdivision (b).

It has also been suggested that the meaning of the exemption found in subdivision (b) should be strictly confined to that which was briefly articulated in State of California ex rel. Division of Industrial Safety v. Superior Court (1974) 43 Cal.App.3d 778. The court in that case said that subdivision (b) "essentially provides public agencies with the protection of the attorney-client privilege, including work product, for a limited period while there is ongoing litigation." (Id. at 783.) There are several problems with giving such a limited meaning to subdivision (b).

There is no question that the exemption found in the subdivision was intended to uphold the attorney-client privilege for public agencies and, indeed, the legislative history of the PRA indicates as much. (Final Report, op. cit. supra, at 9.) However, strictly focusing on the privilege and the rule does not provide a satisfactory explanation of the meaning of subdivision (b) for several reasons.

--To begin with, subdivision (b) is not the source of the protection offered public agencies by the lawyer-client privilege and the work-product rule; to the contrary, that protection derives from other sources which antedate the passage of the Public Records Act. (70 Ops.Cal.Atty.Gen. 28, 29, 31, 37 (1987); cf. Evid. Code, §§ 954, 175; Code Civ. Proc., § 2018.) Indeed, the aforementioned legislative history of the PRA states that "[t]his section [i.e., subdivision (b)], in effect upholds the attorney-client privilege. Subsections (f) and (k) [of § 6254] also contribute to the strength of that privilege." (Final Report, supra, at 9; emphases added.) Clearly, the Public Records Act did not create it.

--Then, as noted in a recent opinion dealing with the matter, lawyer-client communications, work-product files, and litigation records are not coextensive. "Just as lawyer-client communications and work product files are not identical [citation], a record may pertain to pending litigation without being a confidential communication between lawyer and client or produced at the initiative of the attorney in preparation for trial." (71 Ops.Cal.Atty.Gen. 5, 8 (1988). Thus we said, "[b]y use of the word 'essentially', the court [in the Industrial Safety case] cannot be said to have equated [them]." (Ibid.)

--Lastly, the time frame for protection offered by subdivision (b) is more limited than that provided by the attorney-client privilege or the work-product rule. As we have seen, and as will be amplified in connection with our answer to the second question, that of subdivision (b) begins with the commencement of particular litigation to which a public agency is a party, or after the filing of a claim against it under the Tort Claims Act, and terminates with the final adjudication or settlement of the litigation or the claim. The protection from disclosure offered by the attorney-client privilege and work product rule is not so temporally confined: it covers transactions antedating the commencement of litigation (70 Ops.Cal.Atty.Gen., supra, at 29-32, 37), and it continues after litigation has terminated (71 Ops.Cal.Atty.Gen., supra, at 8-9).

Our interpretation has harmonized the exemption provided in subdivision (b) for records pertaining to pending litigation with the attorney-client privilege and the work product rule, by interpreting the former to protect materials that are developed in connection with an agency's prosecuting, defending, appealing or settling any "litigation" to which it has become a party, upon a complaint, or other initiating document, being filed. Subdivision (b) would thereafter exempt from PRA disclosure all documents generated for the litigation during its pendency.

We therefore conclude that the phrase "records pertaining to pending litigation" found in subdivision (b) of section 6254 of the PRA refers to records that are prepared in connection with specific "litigation" to which a public agency has become a party. As we now see, the chronological boundary to establish when the exemption of the subdivision applies, is the filing of the complaint or other initiating document for the action; thereafter subdivision (b) would exempt from disclosure all documents generated in connection with the litigation. However, disclosure would be required of documents that pre-date the filing of the initiating document, unless their disclosure is protected by some other provision of law.

### 2. Agency Records Generated in the Ordinary Course of Business Before Litigation Commences

The second question asks whether records of a public agency which pertain to litigation against the agency become exempt from public disclosure under subdivision (b) of section 6254 when a claim is filed against the agency, if the records were not exempt from disclosure before that time by other provisions of the Public Records Act. In effect the question asks whether any records maintained by an agency that are generated in the normal course of business before particular litigation commences, or a claim against an agency is filed, can ever be subsumed under the exemption found in subdivision (b).

We assume the question contemplates two aspects: one, whether records which are not otherwise exempt from disclosure but which might perchance pertain to future litigation are for that reason protected from disclosure by subdivision (b); and two, whether records which do come to relate to particular litigation involving the agency become exempt from public disclosure under the subdivision if they were not otherwise exempt from disclosure before that time. We conclude that subdivision (b) neither offers exemption from disclosure to records on the chance that they might become relevant in future litigation to which the agency might be a party, nor does it offer exemption from disclosure once the records do come to relate to such litigation.

By terms of subdivision (b) itself, the protection it offers is temporary, in that it provides but a specific time frame for its exemption from disclosure of public records to operate. The subdivision speaks of "records pertaining to pending litigation to which the public agency is a party, or to claims made pursuant to [the Tort Claims Act]" and "until such litigation or claim has been finally adjudicated or otherwise settled." Those phrases confine the operative beginning and end of the protection provided by the subdivision to the commencement of the litigation or claim, i.e., the time after the first pleading is filed to initiate it, and its termination. Accordingly, in answering the first question we concluded that the phrase "records pertaining to pending litigation" means those records of a public agency which have been specifically prepared for particular litigation to which it has become a party. Since the existence of particular litigation or a particular claim is a sine qua non for records to be able to "pertain to" it, the protection of subdivision (b) would not extend to records that antedate the commencement of the litigation or the filing of a claim.

Subdivision (b) plainly speaks of an exemption for "records pertaining to <u>pending litigation</u> to which the public agency is a party." (Emphasis added.) The legislative history of the PRA indicates that was not meant to "grant to [a] public agency the right to withhold information on the basis that litigation <u>may</u>

occur at some time in the future."  (<u>Final Report</u>, <u>op. cit. supra</u>, at 9; emphasis added.)  Thus, both the plain wording of the subdivision, and the indication of legislative intent found in its legislative history tell that subdivision (b) was never meant to exempt from PRA disclosure, records generated in the ordinary course of an agency's business on the mere possibility of future litigation or a future claim being filed against it.[5]

Nor will such preexisting records become protected by the subdivision once litigation actually commences, or a claim is filed against the agency, and the records are relevant to the litigation or claim.  Subdivision (b) protects from PRA disclosure records which <u>pertain to</u> pending litigation or claims filed against the agency.  With respect to the former, we have concluded that means records which are specifically generated for particular litigation, and not preexisting records that may have existed which may now be

_____

[5]It should be noted that in connection with the state's Open Meeting Laws, the Bagley-Keene and Ralph M. Brown Acts, the legislature has permitted state and local agencies to confer with their attorney in closed session to discuss "pending litigation" and the Legislature has defined that term for purposes of those Acts to include, not only the point where an adjudicatory proceeding has been "initiated formally" (§§ 11126(q)(1); 54956.9(a)), but points before that "where . . . there is a significant exposure to litigation" against the state body or local agency.  (§§ 11126(q)(2)(A), 54956.9(b)(1).)  It has been suggested that since the term "pending" can mean "imminent" or "impending" (cf. Webster's, <u>op. cit. supra</u>, at 1669), we should adopt a similar meaning of "pending litigation" for the purposes of subdivision (b) of the PRA and have it protect records generated by an agency before litigation actually commences.  We decline to do so.

As shown in the text, the term "pending litigation," like "pending action," is a term of art and refers to a suit or other action which has already commenced but is not yet decided; in other words, an action or suit is pending from its inception until the rendition of final judgment.  The inception of an action follows the filing of the first paper that commences it.  The Legislature has not defined the term "pending litigation" otherwise for purposes of the PRA.  The fact that it has done so elsewhere to accord confidentiality for agency actions that occur at a time before litigation actually commences does not mean that it meant to do so here. (Cf. <u>Safer</u> v. <u>Superior Court</u> (1975) 15 Cal.3d 230, 238; <u>Board of Trustees</u> v. <u>Judge</u> (1975) 50 Cal.App.3d 920, 927.)  In fact, as mentioned in the text, the legislative history of subdivision (b) indicates that at least that subdivision was not meant to grant an agency the right to withhold information because of anticipated litigation. (<u>Final Report</u>, <u>op. cit. supra</u>, at 9.) The records of course may be exempt from disclosure by reason of another provision of law.

relevant in it.  If a record was a public record and not otherwise exempt from disclosure before litigation commences, the fact that litigation does commence would not change the public nature of the record so as to exempt it from disclosure.  Specifically, the subdivision would not exempt from disclosure such records of an agency that antedate the filing of a claim under the Tort Claims Act.

We therefore conclude that records generated in the ordinary course of a public agency's business which might perchance pertain to future litigation are not exempt from disclosure by reason of subdivision (b) of section 6254 before the "litigation" actually commences, as when a claim or complaint is filed against the agency, nor do they become exempt from disclosure under the subdivision after that time, even though they might be relevant in the action.

### 3.   Police Records Which Must Be Disclosed Under Section 6254, Subdivision (f)

Next we are asked whether police records which must be disclosed under subdivision (f) of the PRA section 6254 are exempt from disclosure under subdivision (b) if they come to pertain to pending litigation.  Subdivision (f) provides an exemption from PRA disclosure for records of complaints to, or investigations conducted by any state or local police agency, but it also requires those law enforcement agencies to disclose the names and addresses of persons involved in, or witnesses to "incidents," and to make public certain information relating to (i) persons arrested by the agency and (ii) complaints or requests for assistance they have received.  Specific inquiry is made as to whether the filing of an action against an agency, such as a wrongful death action, creates an exemption from public disclosure of such previously existing records as arrest records, police investigatory records, police reports, incident reports and complaint reports.  In other words, when such records come to relate to "pending litigation" to which a public agency is a party, is the mandate for disclosure contained in subdivision (f) superseded by the exemption offered by subdivision (b)?  We conclude that it is not.

It is important to keep in mind that the exemptions from disclosure that are set forth in section 6254 operate with independent force; no single exemption from public disclosure under the PRA controls any other, and each is independently examined to determine its applicability.  (Cf. 71 Ops.Cal.Atty.Gen. 5, 8, supra; Berkeley Police Assn. v. City of Berkeley, supra, 76 Cal.App.3d 931, 941; Cook v. Craig, supra, 55 Cal.App.3d 773, 782-784; Black Panther Party v. Kehoe, supra, 42 Cal.App.3d 645, 652-656.)  Thus, theoretically, if a record which otherwise has to be disclosed under subdivision (f) happens to "pertain to pending litigation" to which the local law enforcement agency or its public entity is a party, i.e., if it actually was generated in connection

with an action which has commenced the agency, the record would not have to be disclosed because it would receive exemption from disclosure under subdivision (b) of section 6254.[6]  However, we do not believe that scenario inherent in the question presented, for it contemplates pre-existing police records and not records that have been generated for particular litigation after it commences.

What we have are certain law enforcement records that have already been prepared in the normal course of a law enforcement agency's business, and in subdivision (f) the legislature has mandated that they be disclosed to the public.  The records are thus created and maintained with that potential publicity in mind.  In our discussion of the meaning of the phrase "records pertaining to pending litigation" we have seen how the nature of a record for determining its exempt status is determined at the time of its creation, and how its nature does not change upon the happenstance of subsequent litigation.  There is no reason to treat records which are declared to be public under subdivision (f) any differently.  If they were records available to the public before particular litigation commences, the commencement of the litigation would not convert them to disclosure-exempt records under subdivision (b).

Accordingly we conclude that the filing of an action against an agency does not clothe its previously existing records which had to be disclosed under subdivision (f) with an exemption from disclosure under subdivision (b).

4.  The Claim Itself

Subdivision (b) of section 6254 not only protects records "pertaining to pending litigation to which the public agency is a party" but also records pertaining to "claims made pursuant to

---

[6]It would also seem patent from the structure of subdivision (f) itself that it is meant to be self-contained, and that the mandated disclosures that it contains are only meant to apply to the exemption from PRA disclosure that it itself provides.  The first disclosure it requires (relating to "incidents") is stated as an exception to the subdivision's general exemption from disclosure which proceeds it (cf. People v. Corey (1978) 21 Cal.3d 738, 742; Addison v. Dept. of Motor Vehicles (1977) 69 Cal.App.3d 486, 496; Becker v. State Farm Mut. Auto Ins. Co. (1975) 52 Cal.App.3d 282, 286), and the second disclosure it requires (relating to arrestees and complaints) is preceded by the words "other provisions of this subdivision notwithstanding."  Thus assuming that a record does come within subdivision (f)'s mandated disclosure and is not exempt from that subdivision's general exemption, it would not mean that other exemptions contained in the PRA would not apply to it.

Division 3.6 . . . of Title 1 of the Government Code."  (Cf. fn. 4, ante.)  That is California's Tort Claims Act.

Generally speaking, the Tort Claims Act requires the presentation of a claim to a public entity for money or damages as a prerequisite to bringing a lawsuit against it.  (Gov. Code, §§ 905, 905.2, 910, 945.4.)  The primary function that serves is to apprise the governmental body of the possibility of imminent legal action so that it may investigate and evaluate the claim and, where appropriate, avoid litigation by settling meritorious claims. (City of San Jose v. Superior Court, supra, 12 Cal.3d 447, 455; C.A. Magistretti Co. v. Merced Irrigation Dist. (1972) 27 Cal.App.3d 270, 276; Jenkins v. Contra Costa County (1985) 167 Cal.App.3d 152, 157.)

The claims process commences with the presentation of a claim by the claimant or by a person acting on his behalf.  (Gov. Code, § 910; cf. §§ 905, 911.2.)  That document would be a "public record" because it is a "writing containing information relating to the conduct of the public's business . . . retained by [a] . . . local agency."  (§ 6252, subd. (d); cf. Register Div. of Freedom Newspapers, Inc. v. County of Orange, supra, 158 Cal.App.3d 893, 901; San Gabriel Tribune v. Superior Court, supra, 143 Cal.App.3d 762, 774-775.)  The claim document is also one which relates to the Tort Claims Act's processes and as we have seen, one which helps set a chronological boundary to establish when the exemption of subdivision (b) applies, before which some other exemption must be considered to avoid disclosure of agency documents.  (Fn. 4, ante.) However, the problem with according the claim document itself protection from PRA disclosure under subdivision (b) is that it does not meet the criterion of the subdivision as we have understood it.

We have interpreted the "pertaining to" phraseology of subdivision (b) to protect documents that are generated as a result of an action being commenced.  Particularly, in answering the first question, we interpreted the phrase "records pertaining to pending litigation" as offering protection to records generated in connection with particular litigation after it has commenced with the filing of the first paper to initiate it.  (Cf. fn. 5, ante.) In other words, we perceived the subdivision to protect documents which are created as a result of the initiation of litigation and which are specifically designed to meet it.  We specifically rejected the suggestion that the protection should extend to other records just because they might relate to the litigation.

There is no reason to treat documents involved in the claims process any differently from documents involved in other types of "litigation."  We believe the Legislature deliberately included coverage of records pertaining to claims made pursuant to the Tort Claims Act in subdivision (b) to ensure that they would be covered by it, however broadly the term "litigation" might be

defined. (Cf. <u>Final Report</u>, <u>op. cit. supra</u>, at 9.) But for the purposes of the subdivision, the documents involved in the process would be treated the same as those involved in other "litigation." Indeed, as the legislative history of subdivision (b) indicates:

"Any agency cannot be required to release information that pertains to litigation involving that agency. . . . [¶] <u>The same principle</u> applies to claims made by individuals against public entities and public employees." ( <u>Final Report</u>, <u>op. cit. supra</u>, at 9; emphasis added.)

When a claim document is filed against an agency, it is the claim which generates the action; the action does not generate the claim, and it therefore would not be covered by subdivision (b) as a record "pertaining to . . . claims made pursuant to [the Tort Claims Act]."

In <u>Register Div. of Freedom Newspapers, Inc.</u> v. <u>County of Orange</u>, <u>supra</u>, 158 Cal.App.3d 893, request was made under the PRA for certain documents regarding a secret settlement agreement reached between a public agency and a tort claimant (<u>id.</u> at 897) and question arose whether the claimant's medical records, which were appended to a letter sent by him to the county requesting settlement of his claim, were exempt from disclosure under subdivision (c) of section 6254. (<u>Id.</u> at 899, 902.) The court held they were not because, inter alia, they had been voluntarily submitted by the claimant to further his private interest and "not to accomplish any governmental purpose or goal." (<u>Id.</u> at 902.) Thus, the court said, the agency could not hide behind the claimant's 'privacy' claim to justify its concealment of the records from public scrutiny. (<u>Ibid.</u>, citing <u>San Gabriel Tribune</u> v. <u>Superior Court</u>, <u>supra</u>, 143 Cal.App.3d 762, 778.)

In the case, the county also resisted disclosing the settlement agreement itself, under section 6255 of the PRA, claiming that the public interest served by not making the record public clearly outweigh[ed] the public interest served by disclosure of the record. (158 Cal.App.3d at 909.) It claimed that it was in the public interest to keep secret its settlement policy and decisions, for if known to the public it would result in frivolous tort claims, and it further argued that public scrutiny of the county's settlement procedures would have an adverse impact upon its economic ability to maintain itself as a tort defendant. (<u>Ibid.</u>) The court disagreed:

"Against this interest must be measured the public interest in finding out how decisions to spend public funds are formulated and in insuring governmental processes remain open and subject to public scrutiny. We find these considerations clearly outweigh any public interest served by conducting settlement of tort claims

in secret, especially in light of the policies of disclosure and openness in governmental affairs fostered by both the CPRA and Brown Act. [O]pening up the County's settlement process to public scrutiny . . . will strengthen public confidence in the ability of governmental entities to efficiently administer the public purse." (158 Cal.App.3d at 909; fn. omitted.)

(See also <u>San Gabriel Tribune</u> v. <u>Superior Court</u>, <u>supra</u>, 143 Cal.App.3d at 780.)

Although the exemption provided by subdivision (b) of section 6254 was not at issue in the <u>Freedom Newspapers, Inc.</u> case, we find the thrust of its reasoning applicable herein. If a public agency can neither "hide behind" a tort claimant's "privacy claim" under subdivision (c) to justify its not disclosing medical records submitted in connection with a claim under the Tort Claims Act, nor justify its not disclosing a settlement of a claim on the basis of section 6255, can less be said of a justification not to disclose the claim itself by reason of subdivision (b)?

We therefore conclude that a claim document filed with a public agency under California's Tort Claims Act is not exempt from PRA disclosure under subdivision (b) of section 6254.

\* \* \* \* \*